COMMONWEALTH vs. DAVID CASIANO.

No. 06-P-1503.

Suffolk. September 12, 2007. - November 15, 2007.

Present: CYPHER, KANTROWITZ, & COHEN, JJ.

*Intimidation of Witness. Witness,* Intimidation.

At the trial of a criminal complaint charging intimidation of a witness in violation of G. L. c. 268, § 13B, the judge did not err in denying the defendant's motion for a required finding of not guilty, where the jury could readily infer that the defendant, by pointing a cellular telephone camera at an undercover police witness waiting to testify against the defendant at a criminal hearing and by making a statement implying that he was taking pictures of the officer and could disseminate his likeness over the Internet, threatened the officer's continuing safety and intended to influence the officer's testimony. [707-710]

COMPLAINT received and sworn to in the Dorchester Division of the Boston Municipal Court Department on December 2, 2004.

The case was tried before *Robert N. Tochka*, J.

*Rose E. King* for the defendant.

*Allison Beaumier*, Assistant District Attorney, for the Commonwealth.

KANTROWITZ, J. In the circumstances of this case, we hold that the act of pointing of a cellular telephone camera at a witness waiting to testify in a criminal proceeding constitutes intimidation. We thus affirm the conviction of the defendant.

*Background.* A jury in the Dorchester Division of the Boston Municipal Court Department convicted the defendant, David Casiano, of intimidation of a witness in violation of G. L. c. 268, § 13B.[1] He appeals, claiming that the trial judge erred

---

[1]The defendant was convicted under an earlier version of the statute, G. L. c. 268, § 13A, as amended through St. 1996, c. 393, §§ 2-4, a rewritten ver-

by (1) not granting his motion for a required finding of not guilty; (2) misapplying G. L. c. 233, § 79J, and denying his request to introduce business records from the cellular telephone (cell phone) service provider; and (3) permitting a leading question to the complainant regarding his perception of the defendant's actions.

*Facts.* At trial, the following testimony was offered. On December 1, 2004, the defendant was present in the court house awaiting his trial for drug-related offenses. Several times over the course of the day, the defendant saw an undercover police officer who was also present in the court house to testify against him. At some point, the defendant left the court room, removed a cell phone with an apparent picture-taking component from his pocket, and pointed it at the undercover officer and other officers who were sitting in the court house corridor.[2] The defendant began pressing buttons as if he were taking photographs of the officers. The incident was reported to the judge, who ordered the immediate confiscation of the cell phone.[3] After the phone was taken, the defendant said to the undercover officer, "What do you think I am, fucking stupid? I already emailed the pictures to my house before you took the phone!"[4]

Upon inspection of the cell phone, a court officer could not find photographs of either the undercover officer or any of the other police officers who were present in the corridor at the time the incident occurred. Nor was he able to ascertain whether the defendant's cell phone was capable of connecting to the Internet.

The undercover officer testified that he was concerned that someone involved in drug dealing would recognize him if his picture were posted to the Internet, which could pose a serious threat to his safety and the safety of his family.[5] Indeed, he

sion of which went into effect on March 30, 2006. See St. 2006, c. 48, § 3. The changes do not affect his appeal.

[2] The undercover officer testified: "He had . . . a cell phone . . . , a gray cell phone. And . . . , there was a device attached to it and he just put it out in front of us and took some pictures."

[3] The trial on the drug charges at which the undercover officer was waiting to testify was continued to a later date, at which time the officer testified against the defendant. The jury returned not guilty verdicts.

[4] With the trial transcript being partially incomplete on this point, the parties agreed upon what the defendant uttered.

[5] During the undercover officer's direct testimony, the prosecutor asked him,

checked the Internet in the days following the incident to ascertain whether his photo had been posted.

During the trial on the witness intimidation charge, the defendant attempted to introduce phone records from the cell phone service provider T-Mobile, which he alleged indicated that his cell phone was not operational on the day of the incident. Although the records were certified by an affidavit and faxed to the court by a T-Mobile representative, no one from the company was present at trial to testify about the information contained therein. The judge denied the defendant's request to admit the records, ruling that G. L. c. 233, § 79J, would be violated absent the testimony of a representative from the company.[6] He further ruled that the information was not relevant. At the close of the Commonwealth's evidence, the defendant moved for a required finding of not guilty, which was denied.

On appeal, the defendant claims that the judge erred by not granting his motion because there was insufficient evidence as a matter of law to support the jury's verdict beyond a reasonable doubt. The defendant also claims that the judge improperly denied his request to introduce relevant business records and that the prosecutor asked the complainant a leading question, which prejudiced the defendant. We disagree.

*Discussion.* We review the denial of a motion for a required finding of not guilty to determine "whether the evidence received, viewed in a light most favorable to the Commonwealth, is sufficient so that the jury 'might properly draw inferences, not too remote in the ordinary course of events, or forbidden by any rule of law, and conclude upon all the established circumstances and warranted inferences that the guilt of the defendant was proved beyond a reasonable doubt.' " *Commonwealth* v. *Pope*, 406 Mass. 581, 584 (1990), quoting from *Commonwealth* v. *Clary*, 388 Mass. 583, 588 (1983). "Circumstantial evidence is competent to establish guilt beyond a reasonable doubt." *Com-*

"[A]t the time he was, he was doing what he was doing, did you believe he was taking pictures?" The undercover officer responded, "Yes, ma'am." The defense counsel objected and moved to strike. The objection was overruled.

[6]After reviewing the records, we are unable to discern whether the cell phone was deactivated at the time the incident occurred, and as observed by the judge, a portion of the records was blacked out.

monwealth v. *Merola,* 405 Mass. 529, 533 (1989). "An inference drawn from circumstantial evidence 'need only be reasonable and possible; it need not be necessary or inescapable.' " *Ibid.,* quoting from *Commonwealth* v. *Beckett,* 373 Mass. 329, 341 (1977).

Under the version of the law in effect when the defendant was convicted, the charge of witness intimidation required the Commonwealth to establish that (1) the target of the alleged intimidation was a witness against the defendant in some stage of a criminal proceeding; (2) the defendant wilfully tried to influence or interfere with the witness; (3) the defendant did so by means of "misrepresentation, intimidation, force or express or implied threats of force"[7]; and (4) the defendant did so with the purpose of influencing the complainant as a witness. See G. L. c. 268, § 13B, as amended through St. 1996, c. 393, §§ 2-4; *Commonwealth* v. *Conley,* 34 Mass. App. Ct. 50, 53 (1993).

It is not disputed that the complainant was a witness against the defendant in a criminal trial and that the defendant made a physical gesture consistent with taking a photograph of the witness. The defendant maintains, however, that there is no evidence that he used, in his words, "intimidation, force, or threats of force," arguing that he did not show any hostility toward the witness prior to the action taken; that the witness's purported concern did not prompt him to take any additional precautions as an undercover officer; and that a reasonable police officer in the complainant's position would not have been intimidated.

An action does not need to be overtly threatening to fall within the meaning of "intimidation." *Commonwealth* v. *Gordon,* 44 Mass. App. Ct. 233, 235-236 (1998).[8] Although the defendant did not expressly threaten the officer's person, his ac-

---

[7]The new statute uses "harasses" in place of "force or express or implied threats of force." See St. 2006, c. 48, § 3.

[8]"Webster's Third New International Dictionary 1184 (3d ed. 1993) defines intimidate as 'to make timid or fearful: inspire or affect with fear.' Within the context of G. L. c. 12, § 11H, the Massachusetts Civil Rights Act, our Supreme Judicial Court has similarly defined the concept of intimidation as 'putting in fear for the purpose of compelling or deterring conduct.' *Planned Parenthood League, Inc.* v. *Blake,* 417 Mass. 467, 474, cert. denied, 513 U.S. 868 (1994)." *Commonwealth* v. *Gordon, supra* at 235.

tion threatened the undercover officer's continuing safety. That the defendant did not exhibit hostility toward the officer prior to his actions is inconsequential, as a single act by a defendant is sufficient to satisfy the intimidation statute. *Id.* at 235-236.

Further, it is irrelevant whether a victim takes precautions[9] in response to the defendant's behavior, as "[t]he statute punishes anyone who 'willfully endeavors'[10] to intimidate a witness; it does not require that the intimidation be successful." *Commonwealth* v. *Robinson*, 444 Mass. 102, 109 (2005).

Finally, even if, as the defendant suggests, a reasonable police officer standard were to be applied instead of a reasonable person standard, the trier of fact could infer that a similarly situated police officer anticipating future undercover activities on the street would reasonably be intimidated by a criminal defendant taking his picture. *Commonwealth* v. *Gordon, supra* at 236.

The defendant also maintains that even if his actions did rise to the level of intimidation, the prosecutor did not prove that they were intended to influence the complainant's testimony. Assuming arguendo that in this case an obvious connection between the defendant's actions and his intent is lacking, one can make an inference based upon "[t]he place, time, and circumstances [of the incident]." *Commonwealth* v. *McCreary*, 45 Mass. App. Ct. 797, 800 (1998). Although the defendant did not make any statement indicating that his action was taken to influence the officer's testimony, he did make a threatening statement to the complainant suggesting that he had already sent the photographs to his home computer. The logical import of the statement is that the photographs were irretrievable and could be exploited at a later time. Considering the "time" and "place" of both his action and statement,[11] see *ibid.*, the jury could readily infer that the defendant intended to influence the complainant's impending testimony.

---

[9]Contrary to the defendant's claim, the complainant here did take precautions by checking the Internet after the incident to discover if his image had been disseminated.

[10]The word "endeavors" was deleted in the 2006 version of the statute. See St. 2006, c. 48, § 3.

[11]Even without the statement, we conclude that the evidence was sufficient.

The defendant next claims that there is no evidence that any photographs were ever taken, affecting the "circumstances" aspect of the inference. See *ibid.* It is irrelevant whether any photographs were taken, as the police officer was made to believe that the defendant was taking pictures of him and could disseminate his likeness, an act intended to intimidate.[12]

In sum, the jury had adequate evidence from which to infer that the defendant intended to influence the officer's testimony.[13]

*Judgment affirmed.*

---

[12]Thus, the judge's ruling that the business records were not relevant was one properly made within his discretion. As such, we need not address the judge's other stated reason for excluding the evidence.

[13]The remaining issue is of no consequence. See *Commonwealth* v. *Peloquin*, 30 Mass. App. Ct. 960, 961 (1991) ("It has long been held that the decision whether to allow leading questions should be left for the most part to the wisdom and discretion of the trial judge instead of being restricted by the mechanical operation of inflexible rules" [citations and quotation marks omitted]).