## COMMONWEALTH *vs.* JOSEF R. RIVERA.

No. 09-P-665.

Berkshire. December 11, 2009. - April 7, 2010.

Present: RAPOZA, C.J., KAFKER, & HANLON, JJ.

*Intimidation of Witness. Witness,* Intimidation. *Statute,* Construction. *Practice, Criminal,* Instructions to jury.

This court concluded that the witness intimidation statute, G. L. c. 268, § 13B, as amended by St. 2006, c. 48, § 3, does not require that the words or acts of intimidation actually frighten the potential witness and make the witness reluctant to testify [532-535]; therefore, the evidence at a criminal trial was sufficient to convict the defendant of witness intimidation, despite the victim's testimony that he was not made afraid or reluctant to testify by the defendant's actions [537].

At the trial of an indictment charging a violation of the witness intimidation statute, G. L. c. 268, § 13B, as amended by St. 2006, c. 48, § 3, the judge's instructions to the jury, which were based on a prior version of the statute, did not create a substantial risk of a miscarriage of justice, where the combination of the original instructions and the specific instructions given in response to the jury's questions adequately informed the jury of the elements of intimidation. [535-537]

INDICTMENTS found and returned in the Superior Court Department on September 14, 2007.

The cases were tried before *John A. Agostini,* J.

*Kathleen M. Kelly* for the defendant.

*James Petersen,* Assistant District Attorney, for the Commonwealth.

KAFKER, J. At issue is the March, 2006, amendment to the witness intimidation statute, G. L. c. 268, § 13B. See St. 2006, c. 48, § 3 (2006 amendment or amendment). The primary argument raised by the defendant, Josef R. Rivera, is that the amended statute, G. L. c. 268, § 13B(1)(*c*), as appearing in St. 2006, c. 48, § 3, requires that the Commonwealth prove that the target of the intimidating conduct actually be frightened and reluctant to testify in order for the crime of intimidation

to occur. As we conclude that the elements of intimidation are defined, both before and after the amendment, by the acts, statements, and intentions of the defendant and their ordinary effects on a reasonable person, not the personal reaction of the particular, potential witness, we affirm.

*Background.* On August 20, 2007, the victim, Jonathan Dick, was walking home from work at a Burger King restaurant on First Street in Pittsfield at approximately 1:45 A.M. The defendant, his brother, Jose,[1] and a third man, Hervey Young, crossed the street and confronted the victim. Jose punched the victim in the face. The three men surrounded the victim and told him to "run his pockets" and give them his money. Jose continued to punch the victim as he tried to retreat. As he did so, the defendant punched the victim in the head, and he dropped to the ground.

As the trio assaulted the victim, Pittsfield police Officer Nicholas DeSantis, who was patrolling the area, noticed the altercation and stopped his cruiser. When DeSantis got out of his cruiser, the trio moved away from the victim. Before moving away, Jose warned the victim not to say anything to the police.

Officer DeSantis called the three men over to the cruiser and Jose and Young complied. The defendant continued to walk away. Officer DeSantis told him several times to come over to the cruiser. The defendant told the officer that they were "just joking around." The defendant then turned toward the victim and yelled in a "clear" and "decisive" tone, "[W]e were just joking around right?" After Officer DeSantis physically escorted the defendant back to the cruiser, the officer examined the victim, who appeared "shaken up and upset" and was bleeding from the nose. The victim was then transported to Berkshire Medical Center.

The defendant was indicted for intimidation of a witness, G. L. c. 268, § 13B, and assault with intent to rob, G. L. c. 265, § 20. The defendant was tried before a jury on a joint venture theory. The trial judge denied the defendant's motions for required findings of not guilty on both charges. The jury found the defendant guilty of intimidation of a witness and assault, as a lesser included offense.[2]

---

[1]To avoid confusion, we refer to the defendant's brother, Jose Rivera, by his first name only.

[2]The defendant's brief does not challenge his conviction of assault.

*Discussion.* The defendant primarily claims that there was insufficient evidence to convict him of intimidation because the victim was not made afraid and reluctant to testify. The defendant relies on various statements made by the victim to support this contention. First, when the victim was asked on direct examination how it made him feel when Jose warned him not to talk to the police, the victim testified that his reaction was "quite frankly, screw you. I'm going to say anything anyhow." The victim further explained that he understood that Jose intended to send him the message of "no snitching or whatever it is, which is stupid in itself." When the victim was asked on redirect what he understood the defendant to mean when he said that they were just joking around, the victim testified that he "took it that [the defendant] wanted to intimidate me into saying that as well." Finally, when asked whether he was frightened by the entire episode the victim said, "Frightened in the way that I was going to be hurt, yes. But otherwise, I would say, no."

The defendant contends that the amendment of the witness intimidation statute, effective March 30, 2006 (which is well before the incident for which he was prosecuted), "further clarified" that the Commonwealth needs to prove that the potential witness was frightened and made reluctant to testify. Before the statute was amended in 2006, it read in relevant part: "Whoever, directly or indirectly, willfully endeavors by means of . . . intimidation . . . to influence, impede, obstruct, delay or otherwise interfere with any witness . . . in any stage of a trial, grand jury or other criminal proceeding or with any person furnishing information to a criminal investigator . . . shall be punished . . . ." G. L. c. 268, § 13B, as amended through St. 1996, c. 393, § 3 (prior statute). In contrast, the amended statute reads in relevant part: "Whoever, directly or indirectly, willfully . . . intimidates . . . another person who is . . . a witness or potential witness at any stage of a criminal investigation . . . with the intent to impede, obstruct, delay, harm, punish or otherwise interfere thereby with a criminal investigation, grand jury proceeding, trial or other criminal proceeding . . . shall be punished . . . ." G. L. c. 268, § 13B(1)(c)(i)(v), appearing in St. 2006, c. 48, § 3.

The defendant contends that by removing the word "endeavors" the Legislature required that the intimidating words or

conduct be successful, meaning the defendant instill fear and a reluctance to testify in the potential witness.

If the amendment substantively changed the intimidation requirement in the statute, a number of issues are raised in this case. First, the indictment and jury instructions tracked the statutory language prior to the 2006 amendment.[3,4] Moreover, neither defense counsel nor the prosecution appeared to be aware that the statute had been amended and no objections were raised regarding the language of the indictment or the jury instructions. For the reasons discussed below, however, we conclude that the amended statute does not require that the words or acts of intimidation actually frighten the potential witness and make the witness reluctant to testify.

According to the case law construing the statute before its amendment in 2006, the statute was intended "to protect witnesses from being bullied or harried so that they do not become reluctant to testify or to give truthful evidence in investigatory or judicial proceedings . . . [and] to prevent interference with the administration of justice." *Commonwealth* v. *McCreary*, 45 Mass. App. Ct. 797, 799 (1998). Intimidation, according to the prior case law, was "putting a person in fear for the purpose of influencing his or her conduct." *Ibid.*

Under the prior statute, intimidation was a "means" employed, not an end to be achieved. G. L. c. 268, § 13B, as amended through St. 1996, c. 393, § 3 ("Whoever . . . willfully endeavors by means of intimidation"). The word "endeavors" was construed as indicating that "the Legislature intended to punish any wilful conduct that amounted to an 'effort or essay' to 'influence, impede, obstruct, delay or otherwise interfere with any witness

---

[3]The indictment states that the defendant "did, directly or indirectly, willfully endeavor by means of . . . intimidation . . . to influence, impede, obstruct, delay, or otherwise interfere with Jonathan Dick, a witness in a . . . criminal proceeding."

[4]The judge instructed: "The Commonwealth must prove four elements beyond a reasonable doubt. First element: That the Defendant willfully endeavored to influence, impede, obstruct, delay or otherwise interfere with a person, in this case Jonathan Dick. Second element: That the Defendant did so by means of intimidation. Third Element: That Jonathan Dick was a person furnishing information to a criminal investigator . . . . And the final element: That the Defendant did so with the specific intent of influencing, impeding, obstructing, delaying or otherwise interfering with a person as a witness or potential witness."

. . . in any stage of a trial or other criminal proceeding.' " *Commonwealth* v. *Rondeau*, 27 Mass. App. Ct. 55, 60 (1989) (citation omitted).[5] The court rejected the argument that the "victim was not intimidated because he testified immediately thereafter." *Commonwealth* v. *Robinson*, 444 Mass. 102, 109 (2005). Thus, the prior statute "[did] not require that the intimidation be successful." *Ibid.*

In response to a "new wave" of gang violence and witness intimidation, the Legislature amended G. L. c. 268, § 13B, in 2006. See 2005 Senate Doc. No. 26, at 6.[6] To address these problems, the Legislature expressly expanded the scope of the statute. The means of intimidation, the class of victims, and the kinds of criminal proceedings covered by the statute were all enlarged. Enhanced penalties were also provided for certain firearm offenses. See, e.g., St. 2006, c. 48, § 5. The over-all purpose and effect of the amendment was therefore to expand the scope of the statute to address heightened concerns with witness intimidation and its interference with the successful prosecution of gang members and other street violence.

The defendant nonetheless argues for an interpretation of the amended statute that would narrow its application and undermine its over-all purpose.[7] The defendant contends that regardless of

---

[5]We note that the word "endeavors," as used in "a similar Federal Legislative enactment," *Rondeau, supra* at 59, has been interpreted by both the Federal and State courts to draw a subtle distinction from attempt. *Id.* at 60-61. In *United States* v. *Russell*, 255 U.S. 138, 143 (1921), "[t]he Court stated that an 'endeavor' was not the same as an attempt, and 'by using [endeavor] the [statute] got rid of the technicalities which might be urged as besetting the word "attempt." ' " *Rondeau, supra* at 61. An " 'endeavor' connotes a somewhat lower threshold of purposeful activity than 'attempt.' " *Ibid.* (citations omitted). See *Commonwealth* v. *Belle Isle*, 44 Mass. App. Ct. 226, 230 (1998).

[6]The Legislature amended the statute in response to a report of the Joint Committee on Public Safety entitled, "Reducing Gang Violence in the Commonwealth of Massachusetts." See 2005 Senate Doc. No. 26. Noting that the "alarming trend" in the increase in witness intimidation seriously undermined the successful prosecution of gang members, *id.* at 13, that witness intimidation had placed a "stranglehold" on the ability to convict gang members, *id.* at 8, and that "[t]he criminal justice system only works if witnesses can testify free from fear of retribution," *id.* at 14, the report recommended strengthening witness intimidation laws as one of the primary means of addressing "persistent problems preventing effective prosecution" of gang members. *Id.* at 6.

[7]Indeed, taken to its logical extreme, the only persons who could be prosecuted under the defendant's interpretation of the amended statute are those who succeeded in preventing witnesses from testifying against them.

the words or acts of intended intimidation, if the witness was not frightened and fearful of testifying, the defendant could not be prosecuted for intimidation. We disagree.

The intimidation language at issue was reformulated as part of the larger amendment discussed above. Instead of providing, "Whoever . . . willfully endeavors by means of . . . intimidation . . . to influence . . . any witness . . .", the statute now reads, "Whoever . . . willfully . . . intimidates . . . a witness . . . with the intent to impede . . . ." Although we have found no legislative history explaining the reasons for this particular reformulation, we do not consider the elimination of the word "endeavors," or the remainder of the reformulation, to have the purpose or effect the defendant contends. See *Simon* v. *Solomon,* 385 Mass. 91, 100 (1982) ("A statute should not be read in a manner that defeats its intended utility"). Rather, both before and after the amendment, the Commonwealth was required to prove that the defendant wilfully engaged in intimidating conduct, that is, acts or words that would instill fear in a reasonable person, and did so with the intent to impede or influence a potential witness's testimony. See generally *Commonwealth* v. *Casiano,* 70 Mass. App. Ct. 705, 709 (2007) (applying reasonable person or reasonable police officer standard, court concludes intimidation requirement was met). Neither before or after the amendment was it necessary to establish that the intimidation was successful in the sense that the target of the intimidating conduct was actually frightened and made reluctant to testify.

With this understanding in mind, we consider whether the error here, which was to give jury instructions based on the prior statute, rather than the amended statute, created a substantial risk of a miscarriage of justice.[8] We begin by emphasizing that the issue of the victim's subjective reaction to the conduct was on the jury's minds. During deliberations, the jury submitted the following question to the judge: "Regarding the definition of intimidation, is it the intent of the Defendant to make [the victim] fearful or timid that matters, or is it [the victim's] actual feeling of fear or timidity that matters?" An extensive discussion between counsel

---

[8]As the defendant did not object to the instructions, we review to determine if the alleged error created a substantial risk of a miscarriage of justice. See *Robinson,* 444 Mass. at 105.

and the judge followed the question. In response, the judge first told the jury he was "not sure what the question is asking" and just repeated the instruction on intimidation that he had given previously.

The jury then submitted a follow-up question, which read: "The definition of intimidation says 'intimidation means to make timid or fearful.' Does that mean that [the victim] must have felt fear or timid or does it mean that [the defendant] tried to make [the victim] fearful or timid?" After discussing the issue with counsel, the judge, without objection, instructed the jury as follows: "Now, with respect to the first question: 'Does that mean that [the victim] must have felt fearful or timid?' The answer is, no, there is no requirement or no element that the Commonwealth has to prove that [the victim] must have felt fearful or timid. You may use any evidence that you have received and accepted with respect to [the victim's] reaction in order to determine any of the elements in this case . . . , particularly, intimidation, but the Commonwealth does not have an element to prove that [the victim] felt fearful or timid."[9]

The judge further instructed in respect to the second question: " 'Does it mean that [the defendant] tried to make [the victim] fearful or timid?' The answer to that is yes, that is an element that the Commonwealth has to prove, that [the defendant] tried to make him, meaning [the victim], fearful or timid."

We conclude that the combination of the original instructions, and the specific instructions given in response to the jury's questions, adequately informed the jury of the elements of intimidation. The judge properly instructed the jury that the victim's personal reaction to the defendant's statements was not an element of the offense but could be considered in the jury's determination of the elements of offense, including whether the defendant wilfully employed intimidation, that is conduct or words that would instill fear in a reasonable person, and whether the defendant acted or spoke with the intent to impede, obstruct, or interfere with a

---

[9]During the colloquy, the judge had stated to defense counsel that whether the victim felt fearful or timid is "not an element but it may be evidence to determine whether there was intimidation" by the defendant to influence the victim's testimony. Defense counsel stated, "I think that would be a reasonable way to answer the question."

criminal investigation. Also, in the instruction specifically addressing the jury's question about the victim's reaction, the judge did not use the word "endeavors," which the amendment had eliminated from the statute.

The defendant also argues that there was insufficient evidence to prove that he specifically intended to influence the victim in his role as a witness in a criminal investigation. The defendant claims that his statement, "We were just joking around right," was too insubstantial. We disagree. The victim had just been punched in the head by the defendant. The defendant yelled the statement at the victim in a clear and decisive tone as an officer was investigating the attack, and Jose had just told the victim not to talk to the police. In these circumstances, there was sufficient evidence for a jury to convict the defendant of intimidation.[10]

*Judgments affirmed.*

---

[10]The defendant finally argues that the judge created a substantial risk of a miscarriage of justice by failing to instruct the jury, sua sponte, on defense of another. There is no merit to this claim as the brother clearly did not need help in his attack on the retreating victim. Therefore, as the evidence, viewed in the light most favorable to the defendant, did not support such an instruction, there was no error. See *Commonwealth* v. *McClendon*, 39 Mass. App. Ct. 122, 125 (1995).