PETER HRYCENKO VS. COMMONWEALTH.

Suffolk. February 10, 2011. - April 19, 2011.

Present: IRELAND, C.J., SPINA, COWIN, CORDY, BOTSFORD, GANTS, & DUFFLY, JJ.[1]

*Constitutional Law,* Double jeopardy. *Practice, Criminal,* Double jeopardy. *Intimidation of judge. Judge.*

Following the trial of an indictment charging the defendant with intimidation of a judge, which ended in a mistrial, the judge properly denied the defendant's motion to dismiss the indictment on double jeopardy grounds, where the circumstances of the defendant's postsentencing conduct in the underlying matter (i.e., sending to the sentencing judge at her home a letter in which the defendant asked her to change his sentence, four days before the defendant filed a motion to revise and revoke his sentence) fell within the prohibition in G. L. c. 268, § 13B, against interfering in a "criminal proceeding of any type"; and where the evidence was sufficient to permit a jury to find that the defendant, by sending the letter, intended to impede, obstruct, delay, or otherwise interfere with a criminal proceeding. [507-511]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on July 22, 2010.

The case was reported by *Spina,* J.

*Matthew Campbell* for the defendant.

*Joseph M. Ditkoff,* Assistant District Attorney, for the Commonwealth.

IRELAND, C.J. Peter Hrycenko (defendant) filed a petition in the county court seeking relief, pursuant to G. L. c. 211, § 3, from the denial of his motion to dismiss, on double jeopardy grounds, an indictment charging intimidation of a judge. G. L. c. 268, § 13B.[2] A single justice of this court allowed a joint motion to reserve and report the case to the full court. The defendant contends that the motion judge erred in rejecting his

[1]Justice Cowin participated in the deliberation on this case prior to her retirement.

[2]The indictment charged that the defendant "did . . . willfully, mislead, intimidate or harass" the judge.

argument that G. L. c. 268, § 13B, applies only where there is a pending criminal proceeding, and that there was insufficient evidence from which a jury could infer, beyond a reasonable doubt, his intent to intimidate or harass the judge. Because we conclude that a violation of G. L. c. 268, § 13B, does not require that there be a pending criminal proceeding, and that there was sufficient evidence for a rational jury to infer that a letter the defendant sent to the judge was intimidating or harassing within the meaning of the statute, we remand the case to the county court for an entry of judgment denying the defendant's petition.

*Facts and background.* We present the essential facts in the light most favorable to the prosecution, reserving certain details for our discussion of the issues raised.

On December 20, 2007, the defendant appeared before a judge in the West Roxbury Division of the Boston Municipal Court Department (judge) and pleaded guilty to operating a motor vehicle after a suspension for operating while under the influence of alcohol. The defendant offered to plead guilty, requesting one year's incarceration. After a colloquy, the judge, who also had presided over the defendant's 2001 trial at which he was convicted of operating while under the influence and related charges, accepted the defendant's plea, but adopted the Commonwealth's sentencing recommendation of two years in a house of correction, one year to serve and the balance suspended with two years' probation. The defendant requested a stay of execution, which was denied.

On December 21, 2007, the defendant telephoned his mother from the Suffolk County house of correction, expressed anger about his sentence, and referred to the judge, using a Ukranian word that means "whore." He had a second conversation with his mother the next day in which he told her where the judge lived, declared, "She hates me! She hates me!" and stated, "I wanted another judge, [I] told them . . . I don't want her!"

On December 27, 2007, the judge received a seven-page, handwritten letter from the defendant, which was dated December 23, 2007, addressed to her and mailed to her home. The point of the letter was the defendant's request that the judge "[p]lease

find it in your heart to commute or change this sentence."[3] It began with the following:

> "I am as shocked writing you this letter, as you may be receiving it. I've known of your residence for years and as upset as I have been towards you, I have never retaliated against you or your property because it is not who I am! Please take the time to read this as I want you to *fully* understand the toll your harsh sentences have taken on me and my family" (emphasis in original).

Relevant here is that the defendant also quoted a statement about his *"long criminal record"* that he claimed the judge made in court, and declared that his record is *"75% false allegations"* (emphasis in original).

The judge testified that she was "very alarmed" to receive the letter because, in her sixteen years as a judge, she had never been contacted by a defendant at her home. She identified several passages in the letter that she found threatening, including the opening paragraph, quoted above, which mentioned retaliation for the sentencing and contained language suggesting that she should be shocked to receive the letter; his mention of the fact that he had pleaded guilty to a drug charge so that he could retain his "pistol permit"; and a description of two unrelated crimes involving the defendant's mother (both of which occurred close in proximity to the judge): a knife attack that occurred near the judge's court house and a mugging that occurred five blocks from the judge's home.[4] The judge also testified that asking her to "[p]lease forgive my bold approach" showed that he knew what he was doing was brazen and improper. Because the defendant asked her "as a mother put yourself in my mom's place," the judge thought: "How does this man know that I am a mother? What else does he know about my family? Does he know where my husband works? Does he know where my children go to school and why is he mentioning my role as a mother in reviewing his sentence?" She further

---

[3]At another point in the letter the defendant stated, "[W]on't you please commute my sentence to time served or give me 2 years probation or put me home on a monitoring device."

[4]Concerning the latter incident, the defendant stated that the perpetrator was *"never caught"* (emphasis in original).

stated that his claims that his criminal record was mostly false and that he never had done anything bad intentionally except for "drugs and OUI" meant that he was someone who refused to take responsibility for himself. She also stated that she interpreted the details the defendant included about his losing a house and his mother's suffering in Germany meant that he was blaming her for all his life's misfortunes.

Following protocol, the judge contacted the State police. On December 28, two troopers visited the defendant at the house of correction. After being given the Miranda warnings, the defendant declined to speak to the troopers. While the troopers were waiting to be escorted out of the interview room, the defendant became agitated and stated that the judge had gone out of her way to "fuck him"; that, although he did not know the house number, he knew she lived in a "pink house at the end of the street"; and that he had sent her the letter to get her attention so that she would change his sentence and release him. After the visit from the troopers, the defendant again telephoned his mother and discussed the letter with her.

On December 31, 2007, the defendant's counsel filed a motion to revise and revoke his sentence. In February, 2008, the defendant submitted a pro se motion requesting that the judge recuse herself from consideration of his pending motion to revise and revoke his sentence and what he claimed was a motion for a new trial, on the ground that the judge had filed charges against him.[5] The pro se motion was addressed to the judge's chambers at the court house.

On June 5, 2008, an indictment was returned charging the defendant with violating G. L. c. 268, § 13B. A jury trial was held in August, 2009.

The Commonwealth's theory of the case was that the defendant sent the letter in anticipation of filing motions to revise and

---

[5] The motion to revise and revoke his sentence was dated December 28, 2007. We note that neither the defendant nor the Commonwealth brought this motion to the court's attention or referred to it in their briefs. Indeed, both argued based on the assumption that this motion was never filed. It is apparent from the defendant's pro se motion asking the judge to recuse herself from further proceedings that the defendant thought there were two motions pending, including a motion to revise and revoke. There is nothing on the docket indicating that the defendant filed a motion for a new trial or a motion to recuse.

revoke his sentence or for a new trial, as evidenced by his ask-
ing the judge to reconsider his sentence in the letter (see note 3,
*supra*); by admitting to the State troopers that the reason he sent
the letter was to cause the judge to change his sentence; and by
his motion requesting that the judge recuse herself from pend-
ing motions in his case. The defendant argued that, when viewed
as a whole, the defendant's intent was to ask for sympathy from
the judge and to "gripe" about perceived injustices.

When the jury could not reach a verdict, the judge declared a
mistrial. In anticipation of retrial, the defendant filed his motion
to dismiss on double jeopardy grounds.

*Discussion.* Where there has been a denial of a motion to
dismiss on double jeopardy grounds, "we must examine the
evidence presented at the defendant's trial to determine if it was
sufficient to support a guilty verdict." *Choy* v. *Commonwealth*,
456 Mass. 146, 150, cert. denied, 131 S. Ct. 425 (2010). The
question is "whether, 'after viewing the evidence in the light
most favorable to the prosecution, any rational trier of fact
could have found the essential elements of the crime beyond a
reasonable doubt.' " *Id.*, quoting *Commonwealth* v. *Latimore*,
378 Mass. 671, 677 (1979).

General Laws c. 268, § 13B, as appearing in St. 2006, c. 48,
§ 3, provides, insofar as relevant here:

> "Whoever, directly or indirectly, willfully . . . threatens,
> . . . intimidates or harasses another person who is . . . a
> judge . . . with the intent to impede, obstruct, delay, harm,
> punish or otherwise interfere thereby with a criminal
> investigation, grand jury proceeding, trial or other criminal
> proceeding of any type . . . shall be punished by imprison-
> ment . . . or by a fine . . . .

> "As used in this section, 'harass' shall mean to engage
> in any act directed at a specific person . . . which act seri-
> ously alarms or annoys such person . . . and would cause
> a reasonable person to suffer substantial emotional dis-
> tress. Such act shall include . . . an act conducted by mail
> . . . ."

The purpose of the 2006 revision was to address a persistent
problem of witness intimidation by gang members. *Com-*

monwealth v. *Rivera*, 76 Mass. App. Ct. 530, 534 & n.6 (2010), quoting Report of the Joint Committee on Public Safety, 2005 Senate Doc. No. 26 at 6, 13, 14. The 2006 amendments "expressly expanded the scope of the statute [enlarging t]he means of intimidation, the class of victims, and the kinds of criminal proceedings covered . . . ." *Commonwealth* v. *Rivera, supra* at 534. Pertinent here is that, for the first time, judges were included in the class of victims.[6]

The defendant claims that he is challenging only whether the Commonwealth's evidence is sufficient to prove his intent to "impede, obstruct, delay, harm, punish or otherwise interfere . . . with a . . . criminal proceeding of any type."[7]

He first contends that the statute does not apply to his conduct because all proceedings in his criminal case ended when he was sentenced. He argues that sentencing is a "bright-line, logical ending point for a criminal proceeding" that is favored by the court. We do not agree. Although two of the cases the defendant cites in support of his argument concerned whether a sentence constituted a disposition of a criminal case, they did not address G. L. c. 268, § 13B. See *Commonwealth* v. *Mosher*, 455 Mass. 811, 822 (2010) (attorney-client relationship ends at disposal of case by continuation without finding, which resembles sentence of probation); *Commonwealth* v. *Cory*, 454 Mass. 559, 566 (2009) (probation is disposition of and punishment for crime). The issue here is not whether the case was disposed of, but whether, for purposes of the statute, the defendant's postsentencing conduct is covered by the prohibition against interfering

---

[6]Prior to 2006, G. L. c. 268, § 13B, as amended through St. 1996, c. 393, §§ 2-4, only covered intimidation of a witness, juror, or person furnishing information to an investigator. See *Commonwealth* v. *King*, 69 Mass. App. Ct. 113, 119 & n.6 (2007) (stating that, under 1996 version of statute, intimidation of witness or juror required commencement of formal criminal proceeding; intimidation of person providing information to investigator applied to instances where formal proceeding had yet to be commenced).

The statute was amended in 2010 but any changes do not concern the issues raised in this case. See St. 2010, c. 92, § 11; St. 2010 c. 256, § 120.

[7]We note that the 2006 amendment also added an individual's intent to "harm" or "punish" to the enumeration of the mens rea necessary to constitute a violation of the statute. See generally *Commonwealth* v. *Hamilton, ante* 422, 433-436 (2011), discussed in note 10, *infra.*

in a "criminal proceeding of any type" set forth in G. L. c. 268, § 13B.

The other case on which the defendant relies, *Commonwealth* v. *Cathy C.*, 64 Mass. App. Ct. 471 (2005), concerned G. L. c. 268, § 13B, but was decided under the 1996 version of the statute, in which intimidation of a witness or juror "*in any stage* of a trial . . . or other criminal proceeding" was prohibited (emphasis added). *Id.* at 472, quoting G. L. c. 268, § 13B, as amended through St. 1996, c. 393, § 3.[8] See *Commonwealth* v. *Robinson*, 444 Mass. 102, 109-110 (2005) (under 1996 version of statute, ongoing criminal proceeding necessary for violation of G. L. c. 268, § 13B). In the *Cathy C.* case, after the verdict was announced, but before the juvenile defendant had been sentenced, she threatened a witness who had testified against her. *Commonwealth* v. *Cathy C.*, *supra*. In analyzing the statute, the court noted that the Legislature intended to proscribe a broad range of conduct aimed at an ongoing proceeding. *Id.* The court rejected the defendant's contention that her conduct was not criminal because criminal proceedings were complete when the verdict was announced. *Id.* at 473-475. Instead, it held that the possibility of a sentencing hearing or other postverdict motions were also covered under the statute. *Id.* at 474. Because of the posture of the case, the court discussed only hearings and motions related to sentencing, but it did not hold that sentencing was the end point of all criminal proceedings under the statute.

Even assuming, arguendo, that the court did so hold, under the 2006 version of the statute, where the conduct is aimed at a judge, there is no requirement that the conduct occur "in any stage" of a criminal proceeding.[9] Under the plain language of the statute, there is no requirement that there be a *pending* criminal proceeding. Rather, it requires intent to interfere in a "criminal proceeding of any type." We conclude that a posttrial

---

[8] The statute also had a posttrial component that prohibited acts of physical violence to a person (or property) in retaliation for testimony given at a criminal proceeding. *Commonwealth* v. *Cathy C.*, 64 Mass. App. Ct. 471, 472 (2005).

[9] The "at any stage of a . . . proceeding" language in the 2006 version of the statute applies only to witnesses or potential witnesses. G. L. c. 268, § 13B, (1) (*c*) (i), as appearing in St. 2006, c. 48, § 3.

motion clearly falls under the statute's language. For example, under Mass. R. Crim. P. 29 (a), 378 Mass. 899 (1979), the judge had sixty days after sentencing to change the defendant's sentence on her own or the defendant's motion.

The defendant's argument that there was no proceeding within the meaning of the statute because the defendant did not file a motion to revise and revoke his sentence is baseless. See note 5, *supra.* The motion was filed four days after the judge received the letter at her home asking her to change his sentence. We note that, in the alternative, the letter could be viewed as an attempt to influence the judge to change the sentence on her own motion. In either event, we conclude that the statute applies to the defendant's conduct as an attempt to interfere in a "criminal proceeding of any type."[10]

The defendant next argues that there was insufficient evidence for a jury to find that, when he sent the letter, he intended to "impede, obstruct, delay, harm, punish or otherwise interfere . . . with . . . a criminal proceeding." He asserts that, even looking at the letter to the judge and telephone conversations with his mother in the light most favorable to the prosecution, the incidents point "at most to an intent to complain about and beg for a change of his sentence." The defendant further contends that the letter, considered in its entirety, "is an ill-fated plea for sympathy," which "outlines all the tragic occurrences of the defendant's, and his mother's, life . . . describes his perceived mistreatment by the criminal justice system, and protests his innocence [and] it lists 'character references' for the judge to contact." He argues that the thrust of the letter is an appeal to "the Christmas spirit and sympathy" for his "difficult life" and to request a change in his sentence.

We agree with the Commonwealth that, despite the defendant's assertion to the contrary, his interpretation of the evidence is in the light most favorable to him, not the prosecution. Indeed,

---

[10]The result we reach here is consistent with our holding in *Commonwealth* v. *Hamilton, supra* at 436, which concluded that the meaning of the words "harm" and "punish" under G. L. c. 268, § 13B, (1) (*c*) (v), as appearing in St. 2006, c. 48, § 3, are ambiguous. In this case, a jury could find the defendant intended to "impede, obstruct, delay, . . . or otherwise interfere" with a criminal proceeding; the analysis does not depend on the meaning of the words "harm" and "punish."

his argument is more properly presented to a jury at a retrial. We conclude that, given that the defendant made it clear to the judge that he knew where she lived, as well as his expression of hostility toward her in telephone conversations with his mother and in his statement to the State troopers, a rational jury could conclude that the defendant's description of his own criminal history and ownership of a pistol, his reference to retaliation and his statement that he wanted her to. *"fully* understand the toll your harsh sentences have taken on me and my family" meant to convince the judge that he did mean to harm her in the event that she did not change his sentence. Words do not need to be expressly intimidating, threatening, or harassing. See, e.g., *Commonwealth* v. *Cohen (No. 1)*, 456 Mass. 94, 124 (2010) (telephoning victim ten times is intimidation), quoting *Commonwealth* v. *Casiano*, 70 Mass. App. Ct. 705, 708 (2007); *Commonwealth* v. *Robinson, supra* at 104 (sufficient evidence of witness intimidation where defendant glared at victim, pushed a table away and said in "bloodcurdling way, 'Are you sure you want to go on with this?' "); *Commonwealth* v. *Rivera*, 76 Mass. App. Ct. 530, 531 (2010) (intimidation of witness where defendant yelled to victim who was about to be questioned by police concerning altercation, "[W]e were just joking around right?"). Accordingly, there is sufficient evidence to present the case to a jury that the defendant intended to intimidate the judge.

*Conclusion.* For the reasons set forth above, we remand the case to the county court. The single justice shall enter a judgment denying the defendant's petition for relief pursuant to G. L. c. 211, § 3.

*So ordered.*