Krupp, Peter B., J.
Defendant Khyeme Johnson (“Johnson”) is charged with one count of witness intimidation, G.L.c. 268, §13B, after he took photographs of a group of undercover police officers standing in a public hallway at the Central Division of the Boston Municipal Court (“the BMC”). The matter is before me on defendant’s Superseding Motion to Dismiss (Docket #11), which seeks relief on two grounds. First, Johnson argues that because his conduct described to the grand jury did not violate the witness intimidation statute, the grand juiy did not hear sufficient evidence to support the indictment. Commonwealth v. McCarthy, 385 Mass. 160, 162 (1982). Second, he asserts that even if his conduct does violate the statute, the statute is unconstitutional by infringing his rights under the First and Fourteenth Amendments to the United States Constitution and Articles XVI and LXXVII of Massachusetts Declaration of rights, and is unconstitutionally vague. For the reasons that follow, Johnson’s motion is ALLOWED.
BACKGROUND
The testimony before the grand jury may be summarized as follows.
On January 16, 2016, Officer Brian Linehan (“Linehan”), a member of the Drug Control Unit (“DCU”) assigned to Boston Police Area A-l, was in the BMC with five other DCU officers. The Area A-l DCU officers frequently work in plain clothes, performing surveillance and conducting, among other things, undercover “buy/bust” investigations. None of the officers were in uniform as they waited for a motion hearing or trial outside Courtroom 10, a criminal session at the BMC. Courtroom 10 is the courtroom closest to the elevator. Linehan saw Johnson walking toward the elevator and talking with two or more other people. Johnson and the individuals with whom he was walking initially looked over in the direction of Linehan and the other DCU officers as they walked by. As Johnson waited for the elevator, he took out a cell phone and used it to take more than one flash photograph of the group of DCU officers.
Linehan had previously arrested Johnson a couple of times for drug-related incidents, and recognized him. Johnson likewise was familiar with at least some of the DCU officers. Linehan and the other DCU officers were not in the BMC on January 16 in connection with any case related to Johnson. By that date, the cases defendant had had with the Area A-l DCU were resolved.[1] There was no evidence presented to the grand jury to suggest that defendant knew why the DCU officers were at the BMC, that he was aware of or had any interest in any case that brought them to the BMC, that he had any knowledge of any pending or anticipated case or investigation DCU was then working, or that his decision to take photographs had anything to do with any pending or anticipated case.
In the month prior to January 16, Linehan and members of the DCU had seen Johnson around Boylston Street near the St. Francis House Shelter, an area patrolled by undercover or “plain clothes” DCU officers from Area A-l. The police observed Johnson yelling to alert others to their presence when he saw DCU members in the area.
After seeing the flash of Johnson’s cell phone near the elevator in the BMC, the police approached, took custody of the cell phone, and placed Johnson under arrest. This charge followed. Linehan testified (and told Johnson) that he feared a photograph of himself and his fellow officers could be circulated through social media and, if so, could “jeopardize current investigations, ongoing investigations, future investigations and ... could [jeopardize] the safety of myself in the future or my family or my partners’ safety or their families as well." Johnson told the police he did not know taking pictures was a crime. He apologized and stated that he photographed the officers so he could identify them in the future.
DISCUSSION
A challenge under McCarthy requires a comparison of the evidence produced to the grand jury against the statute defining the crime with which the defendant is charged to determine if the grand jury had a factual basis to find probable cause to believe defendant committed the particular offense. “Probable cause to sustain an indictment is a decidedly low standard.” Commonwealth v. Hanright, 466 Mass. 303, 311 (2013), citing Commonwealth v. Moran, 453 Mass. 880, 883-84 (2009), and Commonwealth v. Hason, 387 Mass. 169, 174 (1982). See also Commonwealth v. *450 Perkins, 464 Mass. 92, 101 & n.18 (2013) (probable cause is “substantially” less than proof required to avoid directed verdict). To survive a McCarthy challenge, the evidence presented to the grand jury must consist of “reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense.” Hanright, 466 Mass. at 311 -12, quoting Commonwealth v. Stevens, 362 Mass. 24, 26 (1972).
Johnson is charged with violating the witness intimidation statute, G.L.c. 268, §13B. It provides in relevant part as follows:
(1) Whoever, directly or indirectly, willfully
(a) threatens, or attempts or causes physical injury, emotional injury, economic injury or property damage to;
... or
(c) misleads, intimidates or harasses another person who is:
(i) a witness or potential witness at any stage of a criminal investigation, grand jury proceeding, trial or other criminal proceeding of any iype;
(ii) a person who is or was aware of information, records, documents or objects that relate to a violation of a criminal statute, or a violation of conditions of probation, parole or bail;
(iii) a . . . police officer . . . ;
(iv) a person who is furthering a . . . criminal proceeding, including criminal investigation, grand jury proceeding, trial, [or] other criminal proceeding of any type . . . ; or
(v) a person who is or was attending or had made known his intention to attend a . . . criminal proceeding, including criminal investigation, grand juiy proceeding, trial, [or] other criminal proceeding of any type . . .
with the intent to impede, obstruct, delay, harm, punish or otherwise interfere thereby, or do so with reckless disregard, with such a proceeding shall be punished . . .
G.L.c. 268, §13B(1).
Here, to establish a violation of section 13B(1), the Commonwealth must prove (1) knowing or intentional conduct that is misleading, threatening, intimidating or harassing, and (2) “defendant’s specific intent to ‘impede, obstruct, delay, harm, punish, or otherwise interfere thereby’ with a criminal investigation.’’ Commonwealth v. Occhiuto, 88 Mass.App.Ct. 489, 504 (2015) (emphasis added), quoting Commonwealth v. Morse, 468 Mass. 360, 372 (2014).
Johnson did not make a false statement or engage in the Iype of “mislead [ing]” conduct that figures prominently in many section 13B cases. See, e.g., Commonwealth v. Figueroa, 464 Mass. 365 (2013) (parolee misleading parole officer investigating his violation of parole conditions); Occhiuto, 88 Mass.App.Ct. 489 (false statement to police officers). Instead, his conduct constitutes harassment (or maybe intimidation) under clause (c) of section 13B.[2] The statute defines “harass” as “any act directed at a specific person or persons, which act seriously alarms or annoys such person or persons and would cause a reasonable person to suffer substantial emotional distress.” G.L.c. 268, §13B(3). See, e.g., Commonwealth v. King, 69 Mass.App.Ct. 113 (2007) (threat to harm victim if victim spoke to police).
In Commonwealth v. Casiano, 70 Mass.App.Ct. 705 (2007), the Appeals Court upheld a conviction under the witness intimidation statute where the defendant made a gesture indicative of taking a photograph of an undercover officer who “was a witness against the defendant in a criminal trial.” 70 Mass.App.Ct. at 708. The Court found that the jury “could infer that a similarly situated police officer anticipating future undercover activities on the street would reasonably be intimidated by a criminal defendant taking his picture.” Id. at 709. Even more than a gesture of taking a photograph would be taking actual photographs themselves. Thus, on these facts, there was sufficient evidence to support a grand jury’s finding of probable cause to believe Johnson’s actions harassed the DCU officers as the term “harasses” is used in section 13B( 1) (c) (iii).
Where this prosecution fails is the absence of evidence of Johnson having a specific intent to interfere with any specific present or reasonably anticipated future criminal proceeding or investigation, or with one or more police officers providing testimony therein.[3] See Hrycenko v. Commonwealth, 459 Mass. 503, 509-10 (2011); Commonwealth v. Hamilton, 459 Mass. 422, 433-34 (2011). Simply interfering with police work, or making such work more difficult or more dangerous, however reprehensible, is not a crime under the witness intimidation statute. The grand jury had no evidence indicating that defendant intended to interfere with a criminal investigation or proceeding. Cf. Casiano, 70 Mass.App.Ct. at 709 (gesture indicative of photographing an undercover police officer, who was present in courthouse to testify against defendant, allows the jury to “readily infer that the defendant intended to influence the complainant’s impending testimony” based on “[t]he place, time, and circumstances [of the incident]”).
Although section 13B(1) has been applied even if no criminal investigation or proceeding has yet been initiated, Occhiuto, 88 Mass.App.Ct. at 505, and the Commonwealth cites to broad language to that effect in Figueroa, 464 Mass at 369-71, the statute has been so applied only when a specific criminal investigation or proceeding was reasonably anticipated.[4] See, e.g., Figueroa, 464 Mass. at 369 (parolee misled his parole officer regarding his failure to comply with conditions of parole; legislative intent of section 13B “to protect parole officers from intimidating . . . conduct committed with the intent to obstruct investigations into *451 potential parole violations that may lead to the revocation of parole and the return of defendants to prison or jail’’); Hrycenko, 459 Mass. at 509 (in connection with intimidating conduct toward judge, “a post-trial motion clearly falls under the statute’s language”); Commonwealth v. King, 69 Mass.App.Ct. 113, 121 (2007) (where defendant threatened victim with harm if victim spoke to police, jury could “reasonably conclude from the surrounding circumstances that it was likely that the victim would furnish to an official investigating authority information pertaining to the crime and that the defendant intended to discourage such communication”).
The Appeals Court’s analysis in Occhiuto supports this conclusion. In that case, the defendant was convicted of misleading a police officer in violation of section 13B. The evidence showed that the defendant lied while being interviewed by law enforcement under the pretense of an official investigation into a state trooper for misconduct. While the defendant made deceptive statements to the police, no actual investigation into that trooper was under way or anticipated at the time. The police had, in fact, concocted a stoiy about investigating the trooper as a ruse to interview the defendant. The Court found it irrelevant that the police suspected the defendant was involved in selling illegal drugs. 88 Mass.App.Ct. at 505. It ultimately vacated the defendant’s conviction for witness intimidation, emphasizing that “(t]he Legislature intended the statute to encompass any investigation or proceeding that may result in criminal-type sanctions.” Id. (italics in original; internal quotations and citation omitted). Because “no such investigation was intended or contemplated” involving the state trooper, the Court held that the investigation could not possibly have resulted in criminal-type sanctions and therefore “the evidence was insufficient to prove the existence of a criminal investigation within the meaning of the statute.” Id.
Similar reasoning applies in this case. At the time he took the photographs, no criminal charges were pending against Johnson, nor were any contemplated or intended by the DCU or any other law enforcement agency. As in Occhuito, Johnson was known to the police for past criminal activity but, unlike in Occhuito, Johnson was not on their radar for ongoing illegal conduct—he was a private citizen in a public hallway. The grand juiy heard no evidence that Johnson had any interest in any pending or imminent proceeding involving DCU officers. Even disregarding Johnson’s statement that he had no intention of using the photographs to impede any kind of police investigation or criminal proceeding, any inference that he had specific intent to interfere with actions that “may result in criminal-type sanctions” would be improper. Id. (defendant cannot form intent to interfere with investigation of which he has no knowledge).
If the law were otherwise, it would lead to absurd results, contrary to the mandate to interpret statutes sensibly. See Figueroa, 464 Mass, at 368 (discussing relevant principles of statutoiy interpretation). On the Commonwealth’s theoiy, anyone from neighborhood residents to journalists could be indicted under section 13B for taking pictures of undercover police officers in public places. Linehan’s concern for his personal safety and that of his loved ones and co-workers due to the possibility of his identity and profession being revealed through Johnson’s actions is legitimate. Nonetheless, without additional evidence that Johnson took the pictures with the intent to interfere with a specific criminal investigation or proceeding, those actions do not constitute a violation of section 13B. This interpretation comports with the statute’s plain language and its obvious purpose and scope. See Morse, 468 Mass, at 367 (though scope of section 13B has been recently expanded, it “is still fundamentally a witness intimidation statute,” that is “concerned primarily with countering the effect of witness intimidation on the successful prosecution of criminals”).[5]
ORDER
Defendant’s Superseding Motion to Dismiss (Docket #11) is ALLOWED. The indictment is DISMISSED.

 There was no testimony about how long before January 2016 those cases were resolved.

 defendant’s conduct might also be construed as “threaten[ing]” under clause (a). However, any such threat would be, at most, inchoate, requiring additional steps to complete. Merely taking photographs does not itself threaten injury absent dissemination or circulation of the photographs. Even if the “threats” clause is implicated, the analysis is the same.

 dhe requirement of a pending or reasonably anticipated proceeding or investigation is underscored by the statute’s venue provision. The statute allows a violation of section 13B(1) to “be brought in the county in which the criminal investigation, grand jury proceeding, trial or other criminal proceeding is being conducted or took place, or in the county in which the alleged conduct constituting an offense occurred.” G.L.c. 268, §13B(4) (emphasis added).

 The Commonwealth does not argue that Johnson’s indictment could stand if he took the photographs because the DCU officers had previously been involved in an investigation of him. It is not clear that an intent to retaliate against a witness in a past investigation would implicate the witness intimidation statute. See Hamilton, 459 Mass. at 431-37 (reversing conviction for threatening call made to parole officer who had found defendant in violation; court applies rule of lenity to resolve statutoiy ambiguity).

 Because I find that the unique facts of this case do not transgress the witness intimidation statute, I need not address Johnson’s arguments under the First Amendment or define the line between witness intimidation and the right to record the actions of public officials, including police officers who sometimes work undercover. See Glick v. Cunnife, 655 F.3d 78, 85 (1st Cir. 2011).