## Commonwealth *vs.* Steven J. Morse.

Hampshire. February 3, 2014. - June 13, 2014.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.

*Homicide. Misleading a Police Officer. Vessel,* Homicide. *Evidence,* Intent.

Discussion of crimes against public justice [366-367] and of the legislative history of G. L. c. 268, § 13B, the witness intimidation statute, including its recent amendment criminalizing the wilful misleading of a police officer [367-372].

At a criminal trial, the evidence, which established that the defendant, in response to police questioning, denied having ingested substances that could have resulted in his impairment while operating a motorboat, was insufficient as a matter of law to support a conviction of misleading a police officer in violation of G. L. c. 268, § 13B, where the questioning was less than clear; where the defendant's response (a subjective assessment of the idiosyncratic effects of various substances on his own alertness and judgment) was not knowingly false; and where there was insufficient evidence, taken in the light most favorable to the Commonwealth, that the defendant had the specific intent necessary to establish a violation of the statute. [372-375]

At a criminal trial, sufficient evidence supported the defendant's conviction of homicide by vessel in violation of G. L. c. 90B, § 8B (2), under the theory that the defendant operated the vessel while under the influence of intoxicating liquor or marijuana. [375-378]

Indictments found and returned in the Superior Court Department on December 7, 2010, and July 19, 2011.

The cases were tried before *Daniel A. Ford*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Merritt Schnipper* for the defendant.

*Thomas H. Townsend*, Assistant District Attorney, for the Commonwealth.

*Linda J. Thompson*, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

*Monica R. Shah*, for Massachusetts Association of Criminal Defense Lawyers, amicus curiae, submitted a brief.

LENK, J. The defendant was piloting a motorboat in the late afternoon of August 17, 2010, when it struck a kayak.[1] Ten year old Augustus Adamopoulos, who was in the kayak fishing with his father, died as a result of the collision; his father sustained serious injuries. The defendant was charged with manslaughter, G. L. c. 265, § 13; serious bodily injury and homicide[2] by vessel, G. L. c. 90B, §§ 8A, 8B; and three counts of child endangerment while operating a vessel while under the influence of alcohol or drugs, G. L. c. 90, § 24V.

In an interview with police following the collision, the defendant admitted to having drunk beer before operating the boat, but responded negatively to the question whether he had "consume[d] any other, you know, substances that could've impaired [his] ability to, you know, be aware of what was going on around [him]." Because police later discovered that the defendant had smoked marijuana before the collision, the defendant also was charged, under the witness intimidation statute, G. L. c. 268, § 13B (§ 13B), with misleading a police officer. Evidence of his negative response to the question was admitted against him at trial; the jury were instructed to consider such evidence only in relation to the § 13B misleading charge. A Superior Court jury convicted the defendant of misleading a police officer and misdemeanor homicide by vessel, and acquitted him of the other charges. The defendant appealed, and we granted his application for direct appellate review.

The defendant challenges the validity of both convictions. He argues that his conviction of misleading a police officer should be reversed because the statute, as applied, violates the prohibition in art. 12 of the Massachusetts Declaration of Rights against the compelled furnishing of evidence against oneself. He further argues that the statute violates the common-law rule against the admission of evidence of a defendant's unequivocal denial of a police accusation, and that the statute, as applied to him, is

---

[1] We acknowledge the amicus briefs submitted by the Committee for Public Counsel Services and the Massachusetts Association of Criminal Defense Lawyers on behalf of the defendant.

[2] General Laws c. 90B, § 8B, embraces both felony and misdemeanor homicide by vessel.

unconstitutionally vague.[3] The defendant also contends that his homicide conviction should be reversed because there was insufficient evidence that he was operating while under the influence of alcohol or drugs.

We conclude that there was insufficient evidence that the defendant misled a police officer with the specific intent necessary to prove a violation of § 13B, and therefore reverse that conviction. We affirm the homicide conviction.

1. *Background.* a. *Events of August, 2010.* We summarize the facts the jury could have found based on the evidence at trial. The defendant spent part of August 17, 2010, at Norwich Lake in Huntington, where his family owned a cottage. Before arriving at the lake, the defendant had worked at his landscaping business. Upon finishing work at approximately 2:30 or 3 P.M., the defendant and his employee, Brian Friuglietti, drank beer and smoked marijuana at the defendant's shop. The defendant consumed two cans of beer and took one "hit" of marijuana.[4]

The defendant and Friuglietti arrived at the lake in the late afternoon, where they met the defendant's wife and children. The defendant and Friuglietti went on the water in a motorboat and pulled the defendant's children behind the boat in inflatable inner tubes. They returned to shore close to 5 P.M., at which point the defendant consumed "two beers" and took two hits of marijuana. Approximately one hour later, an acquaintance drove by in another boat and asked the defendant to pull him around the lake while he waterskied, since the children accompanying him were too young to operate the vessel. The defendant agreed, and began to pilot the acquaintance's boat, with three children as passengers, pulling the waterskier behind him.

The path of the boat coincided with a patch of glare on the

<hr>

[3]The defendant's void-for-vagueness claim primarily is concerned with the ambiguous nature of the question posed to him by police, which, he contends, called for an "inherently subjective" answer. As such, we understand him to argue that, on the facts of this case, there is insufficient evidence that he either made a knowingly false statement or intentionally omitted information, as necessary to establish a violation of G. L. c. 268, § 13B (§ 13B). See *Commonwealth* v. *Figueroa*, 464 Mass. 365, 372 (2013).

[4]To take a "hit" of marijuana means to take one puff of marijuana from a cigarette or other smoking implement.

water, which had become more extreme as the sun had begun to set.[5] Shortly after entering the patch of glare, sometime between 6 and 6:30 P.M., the defendant's boat struck the kayak in which Augustus and his father were fishing. Augustus was thrown from the kayak and submerged underwater for a period of time. When he surfaced, his arm was missing and there was a deep gash in his back. The defendant brought Augustus to shore in the motorboat, where he was loaded into an ambulance. Augustus died as a result of his injuries.[6]

An environmental police officer interviewed the defendant on the lakeshore approximately one hour after the collision. When the defendant admitted to drinking two beers at 5 P.M., the officer administered several field sobriety tests, which the defendant completed successfully. Although a portable breathalyzer test detected the presence of alcohol in the defendant's system, the officer did not smell an odor of alcohol, nor did he observe the defendant's eyes to be red or bloodshot or his speech to be slurred. The defendant cooperated with the questioning and his responses were coherent. At the end of the interview, the defendant, who was not under arrest, agreed to return to the State police barracks for further questioning.

At the barracks, the defendant submitted to a breathalyzer test at approximately 9:30 P.M.; the test showed a blood alcohol level of 0.00 per cent. A State police detective and trooper then resumed questioning the defendant about the circumstances of the collision, after providing him with the requisite Miranda warnings. The defendant acknowledged having consumed "a couple of beers earlier in the day" while at his shop, but maintained that he had not consumed alcohol after leaving his shop and was not impaired while piloting the boat. Police then asked whether he had consumed other substances that day:

> TROOPER: "Did you consume any — are you on any kind of medication?"
>
> DEFENDANT: "Nope."

---

[5]Several witnesses described being "blinded" by the glare or stated that the glare made it "hard to see" other things on the lake.

[6]There was no testimony concerning the time of death.

TROOPER: "Did you consume any other, you know, substances that could've impaired your ability to, you know, be aware of what was going on around you?"

DEFENDANT: "No."

At the end of the interview, police told the defendant that he was free to leave, and he departed.

On August 23, 2010, State troopers contacted the defendant again after learning new information during the course of their investigation concerning the defendant's marijuana use on the day of the collision, August 17. They arranged to meet the defendant in a parking lot to ask him some follow-up questions. During the meeting, the defendant told the troopers that he had smoked marijuana at his shop on the day in question, and also that he had "hit the bowl twice" after arriving at the lake, approximately one hour before starting to pull the waterskier on the motorboat; during his interview on August 17, he had not mentioned smoking marijuana.

b. *Pretrial and trial proceedings.* Prior to trial, the defendant moved to preclude admission of evidence that, during his interview with police, he had denied consuming other substances that could have impaired his "ability to . . . be aware of what was going on around [him]." In support of the motion, the defendant argued that the presentation of such evidence at trial would violate the common-law rule against admission of a defendant's denial of a police accusation. On the morning of the first day of trial, the defendant also moved to sever the charge for misleading a police officer from the underlying charges arising from the boating collision.

The judge ruled that the evidence was inadmissible to prove the defendant's consciousness of guilt of the underlying charges, but that it could be used to establish that the defendant misled police, in violation of § 13B, a charge the judge declined to sever. During trial, an audio recording of the defendant's August 17, 2010, police interview was played for the jury,[7] and a State trooper testified that, if police had known on August 17 that the defendant had smoked marijuana before operating the boat, they

---

[7]The defendant renewed his objection before the audio recording of the police interview was played for the jury.

would have called a drug recognition expert to examine him at the police station, and would have sought a warrant to draw his blood and search his vehicle for marijuana.

The defendant also moved before trial to exclude evidence that he had consumed alcohol before the collision, arguing that such evidence would be unduly prejudicial where there was no other evidence of impairment. This motion was denied after the pretrial voir dire testimony of a drug recognition expert. At trial, in support of its theory that the defendant operated the vessel while under the influence, the Commonwealth introduced the aforesaid evidence concerning the defendant's consumption of beer and marijuana on August 17, 2010, and called the drug recognition expert to testify to the effects of both substances on the average person.[8]

The expert explained that the effects of ingesting marijuana include dilation of the pupils, increased blood pressure, and impaired perception of time and distance, and that the effects can persist for several hours following ingestion. The expert also described symptoms attendant to alcohol consumption, as well as the "synergistic effect" of alcohol and marijuana working in tandem, which can slow an individual's reaction time to light stimuli. An individual who ingested both alcohol and marijuana, the expert testified, could experience an unusual degree of pupillary dilation, which would permit a greater amount of light to enter the eyes; this could cause the individual to react by turning away from the light source.

In his final instructions to the jury, the judge explained that they could convict under G. L. c. 90B, § 8B (2), if they found either that the defendant had operated the boat while under the influence of an intoxicating substance or that he had operated recklessly or negligently so as to endanger the lives or safety of the public. At the defendant's request, the judge further informed the jury that a conviction under that statute had to be unanimous

---

[8]Before the expert took the stand, defense counsel reiterated his argument that the expert's testimony was irrelevant and prejudicial, given the state of the evidence, and should therefore be excluded. In the alternative, counsel requested that the expert be precluded from testifying until the jury had heard the rest of the Commonwealth's evidence, including the fact that the defendant had passed the field sobriety tests administered to him at the lakeshore. Counsel's request was denied.

as to the theory of guilt. When the jury returned a verdict of guilty of misdemeanor homicide by vessel, however, they did not specify a theory of guilt either in open court or on the verdict slip.

The judge's final charge also included instructions regarding the proper use of the defendant's statements to police. The judge instructed the jury that, if they accepted evidence that the defendant denied having "ingested any substance other than alcohol that could or would have impaired his ability to know what was going on around him," they could consider such evidence only in relation to the charge of misleading a witness.

2. *Discussion.* a. *Conviction of misleading a police officer.* Because we have not considered the application of § 13B to a defendant who, when responding to police questions concerning his potentially criminal conduct, falsely denied such conduct, we first set forth the existing statutory scheme for prosecuting crimes against public justice.

i. *Overview of crimes against public justice.* There is no general obstruction of justice statute in Massachusetts, as there is in the Federal system and in a number of other States. See, e.g., 18 U.S.C. § 1503(a) (2006) (whoever "corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice" shall be punished); Ark. Code. Ann. § 5-54-102 (1987) ("[a] person commits the offense of obstructing governmental operations if the person," inter alia, "[k]nowingly obstructs, impairs, or hinders the performance of any governmental function"); N.Y. Penal Law § 195.05 (McKinney 2010) ("A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by[, inter alia,] means of intimidation, physical force or interference").

Instead, a patchwork of statutes establishes various "crimes against public justice" and "crimes against public peace," some of which involve uttering false statements or interfering with governmental operations in different capacities. For example, the perjury statute, G. L. c. 268, § 1, prohibits wilfully swear-

ing or affirming falsely in a deposition or otherwise while under oath as to a matter material to the issue in question. It is also a criminal offense to, inter alia, knowingly and wilfully furnish a false name or Social Security number to a law enforcement officer following arrest, G. L. c. 268, § 34A; to fail to report crimes under certain circumstances, G. L. c. 268, § 40; and to knowingly and intentionally make a false report of crime, G. L. c. 269, § 13A.

One of the broader statutes in the category of "crimes against public justice" is § 13B, the statute under which the defendant in this case was convicted of misleading a police officer. The scope of that statute, titled "Intimidation of witnesses, jurors and persons furnishing information in connection with criminal proceedings," has been enlarged since its enactment in 1969, most substantially in 2006, but is still fundamentally a "witness intimidation statute." See St. 2006, c. 48, § 3; St. 1969, c. 460. See also *Commonwealth* v. *Hamilton*, 459 Mass. 422, 434 n.16 (2011); *Commonwealth* v. *Rivera*, 76 Mass. App. Ct. 530, 532-534 (2010). The 2006 version of the statute, relevant here, remains concerned primarily with countering the effect of witness intimidation on the successful prosecution of criminals. See G. L. c. 268, § 13B, as appearing in St. 2006, c. 48, § 3; *Commonwealth* v. *Rivera, supra* at 534. In this regard, it does not contain the sort of "omnibus" or "catchall" obstruction of justice provision included in a similar Federal statute, 18 U.S.C. § 1503, that proscribes the influencing of court officers and jurors. See *United States* v. *Aguilar*, 515 U.S. 593, 598 (1995).

ii. *Legislative history of § 13B.* Section 13B was enacted in 1969, see St. 1969, c. 460, and was not amended substantially until 2006, when the Legislature added the prohibition against misleading a police officer relevant to this case. See St. 2006, c. 48, § 3. In its original form, its purpose, "rather obviously, [was] to protect witnesses from being bullied or harried so that they [did] not become reluctant to testify or to give truthful evidence in investigatory or judicial proceedings." *Commonwealth* v. *McCreary*, 45 Mass. App. Ct. 797, 799 (1998). See *Commonwealth* v. *Cruz*, 442 Mass. 299, 309 (2004).

"[P]rior to the 2006 amendment, § 13B separately criminalized two discrete types of misconduct: '(1) interference, actual

or threatened, with a witness or juror during the pendency of a criminal proceeding, and (2) physical injury to person or property undertaken in retaliation for testimony given at a criminal proceeding, regardless of when such acts are carried out.' " *Commonwealth* v. *Hamilton, supra* at 433, quoting *Commonwealth* v. *Cathy C.,* 64 Mass. App. Ct. 471, 472 (2005).[9]

The 2006 amendment overhauled § 13B as part of a larger "act reducing gang violence" (act), significantly expanding its scope in the process, although not its essential purpose. See St. 2006, c. 48, § 3. The act adopted many of the recommendations of a report of the Joint Committee on Public Safety, titled "Reducing Gang Violence in the Commonwealth of Massachusetts," 2005 Senate Doc. No. 26. That report had noted an "alarming trend toward witness intimidation cases, which can seriously undermine the successful prosecution of known gang members." *Id.* at 13. To that end, one of the report's chief proposals was the enactment of "stronger witness and victim intimidation laws to ensure the prosecution of known gang members," and explained that

> "[t]he criminal justice system only works if witnesses can testify free from fear of retribution. Criminals and gang members use a number of methods to intimidate victims and witnesses and force perjured statements under oath. Important changes to Massachusetts law can be made to provide prosecutors and police officers with additional power to keep dangerous criminals off the streets and away from witnesses."

*Id.* at 14.

---

[9]The language of the statute before 2006 stated in part:

> "Whoever, directly or indirectly, willfully endeavors by means of a gift, offer or promise of anything of value or by misrepresentation, intimidation, force or express or implied threats of force to influence, impede, obstruct, delay or otherwise interfere with any witness or juror in any stage of a trial, grand jury or other criminal proceeding or with any person furnishing information to a criminal investigator relating to a violation of a criminal statute of the commonwealth, and whoever injures any person or damages his property on account of the giving of such information to a criminal investigator or on account of testimony given at a trial, grand jury or other criminal proceeding, shall be punished . . . ."

G. L. c. 268, § 13B, as amended through St. 1996, c. 393, §§ 2-4.

The act adopted the report's recommendations by "expand-[ing] the scope of the conduct prohibited [by § 13B], the classes of victims protected, and the types of criminal proceedings covered."[10] *Commonwealth* v. *Figueroa*, 464 Mass. 365, 368 (2013). As a result, § 13B for the first time outlawed "mislead-[ing]" and "harass[ing]" conduct, in addition to the "threaten-[ing]" and "intimidat[ing]" conduct that the prior version of the statute had proscribed.[11] Beyond simply witnesses and jurors, it

---

[10]The act also followed the report's other recommended legislative amendments to facilitate prosecution of gang members. It established a State witness protection program; criminalized the use of grand jury transcripts to interfere with a criminal trial; adopted the Federal standard for perjury, see 18 U.S.C. § 1623(c) (2006), such that a prosecutor need only show that a person made irreconcilable statements under oath, rather than prove beyond a reasonable doubt that a contradictory statement was false; and gave judges broader discretion to apply a stay-away order as a condition of bail whenever it may be appropriate. See St. 2006, c. 48; 2005 Senate Doc. No. 26, at 14-16.

[11]The 2006 version of the statute provides:

"(1) Whoever, directly or indirectly, willfully

"(*a*) threatens, or attempts or causes physical injury, emotional injury, economic injury or property damage to;

"(*b*) conveys a gift, offer or promise of anything of value to; or

"(*c*) misleads, intimidates or harasses another person who is:

"(i)  a witness or potential witness at any stage of a criminal investigation, grand jury proceeding, trial or other criminal proceeding of any type;

"(ii) a person who is or was aware of information, records, documents or objects that relate to a violation of a criminal statute, or a violation of conditions of probation, parole or bail;

"(iii) a judge, juror, grand juror, prosecutor, police officer, federal agent, investigator, defense attorney, clerk, court officer, probation officer or parole officer;

"(iv) a person who is or was furthering a criminal investigation, grand jury proceeding, trial or other criminal proceeding of any type; or

"(v) a person who is or was attending or had made known his intention to attend a grand jury proceeding, trial or other criminal proceeding of any type with the intent to impede, obstruct, delay, harm, punish or otherwise interfere thereby with a criminal investigation, grand jury proceeding, trial or other criminal proceeding of any type shall be punished by

prohibited such conduct targeted at police officers, judges, and attorneys, among others. The amended statute also criminalized misleading, intimidating, or harassing not only people who had furnished information to criminal investigators, as the old version had, but also people who were aware of such information, were furthering a criminal proceeding in any capacity, or were attending such a proceeding or had made their intentions to attend known. "The over-all purpose and effect of the amendment was therefore to expand the scope of the statute to address heightened concerns with witness intimidation and its interference with the successful prosecution of gang members and other street violence." *Commonwealth* v. *Rivera, supra* at 534. See *Hrycenko* v. *Commonwealth*, 459 Mass. 503, 507-508 (2011).

iii. *"Misleading" prong of § 13B*. Under the "misleading" prong of § 13B, as relevant to this case, whoever directly or indirectly (1) wilfully misleads (2) a police officer (3) with the intent to impede, obstruct, delay, harm, punish, or otherwise interfere thereby with a criminal investigation shall be punished.[12] G. L. c. 268, § 13B (1) (*c*).

Because the term "misleads" is not defined in § 13B, we have provided a working definition to explain what constitutes "misleading conduct," as we have done for the term "intimidates," similarly undefined by the statute.[13] See *Commonwealth* v. *Robinson*, 444 Mass. 102, 109 (2005), quoting *Commonwealth* v. *McCreary*, 45 Mass. App. Ct. 797, 799 (1998) (setting forth elements of "witness intimidation").[14] In *Commonwealth* v. *Figueroa, supra*, we adopted the definition of "misleading" that

imprisonment for not more than 2½ years in a jail or house of correction or not more than 10 years in a state prison, or by a fine of not less than $1,000 nor more than $5,000."

G. L. c. 268, § 13B, as appearing in St. 2006, c. 48, § 3.

[12]Section 13B has been amended twice since 2006, but both amendments took effect after the conduct at issue in this case. See St. 2010, c. 256, § 120; St. 2010, c. 92, § 11. We therefore analyze the 2006 version of the statute.

[13]The term "harass," however, is defined in the statute as "to engage in any act directed at a specific person or persons, which act seriously alarms or annoys such person or persons and would cause a reasonable person to suffer substantial emotional distress." G. L. c. 268, § 13B (3), as appearing in St. 2006, c. 48, § 3.

[14]Cf. *Commonwealth* v. *Rivera*, 76 Mass. App. Ct. 530, 535 (2010)

appears in the Federal witness-tampering statute.[15] According to that definition, "misleading conduct" comprises:

> "(A) knowingly making a false statement; (B) intentionally omitting information from a statement and thereby causing a portion of such statement to be misleading, or intentionally concealing a material fact, and thereby creating a false impression by such statement; (C) with intent to mislead, knowingly submitting or inviting reliance on a writing or recording that is false, forged, altered, or otherwise lacking in authenticity; (D) with intent to mislead, knowingly submitting or inviting reliance on a sample,

("intimidating conduct" refers to "acts or words that would instill fear in a reasonable person").

[15]The Federal witness-tampering statute, 18 U.S.C. § 1512 (2006), is distinct from the statute generally concerning obstruction of justice, 18 U.S.C. § 1503 (2006). The witness-tampering statute, although in some respects similar to § 13B, contains different elements. The portion of the statute proscribing "misleading conduct" provides that:

> "Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to —
>
> > "(1) influence, delay, or prevent the testimony of any person in an official proceeding;
> >
> > "(2) cause or induce any person to —
> >
> > > "(A) withhold testimony, or withhold a record, document, or other object, from an official proceeding;
> > >
> > > "(B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;
> > >
> > > "(C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or
> > >
> > > "(D) be absent from an official proceeding to which such person has been summoned by legal process; or
> >
> > "(3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings [shall be punished]."

18 U.S.C. § 1512(b).

specimen, map, photograph, boundary mark, or other object that is misleading in a material respect; or (E) knowingly using a trick, scheme, or device with intent to mislead."[16]

*Id.* at 372, quoting 18 U.S.C. § 1515(a)(3) (2006). Each aspect of the definition adopted suggests a knowing or intentional act calculated to lead another person astray. Objectively misleading conduct, as defined, is not enough, however, to establish the offense. In addition to the requirement that there be knowing or intentional conduct that is objectively misleading as defined, a statutory violation is not established unless there is also proof of a defendant's specific intent to "impede, obstruct, delay, harm, punish, or otherwise interfere thereby" with a criminal investigation. G. L. c. 268, § 13B (1) (*c*) (v) (impeding element).

iv. *Application to this case.* Turning to the facts of this case, we conclude that evidence that the defendant denied having ingested substances that could have resulted in his impairment while operating the motorboat was insufficient as a matter of law to support a conviction under § 13B.

It is far from clear in the first instance that the defendant's statement to police at issue can be viewed as constituting either (A) a knowingly false statement, or (B) one that intentionally omitted information, thereby causing it to be misleading, or intentionally concealed a material fact, thereby creating a false impression.[17] See *Commonwealth* v. *Figueroa, supra* at 372. During the August 17, 2010, interview, police did not ask the defendant point-blank whether he had smoked marijuana that day. They instead inquired somewhat opaquely as to whether he had "consume[d] any other, you know, substances that could've impaired [his] ability to, you know, be aware of what was going on around [him]." The question was not a model of clarity and, as phrased, required the defendant to assess the idiosyncratic effects of various substances on his own alertness and judgment.

Such a subjective assessment is not capable of being proven false. See *Rotkiewicz* v. *Sadowsky,* 431 Mass. 748, 756 (2000)

---

[16]We adopted this definition of "misleading conduct" in *Commonwealth* v. *Figueroa,* 464 Mass. 365, 372 (2013), after the defendant's 2012 trial.

[17]Elements (C) through (E) of the definition of "misleading conduct" are not applicable to this case.

(subjective statements of opinion not susceptible of being proven false). Cf. *Commonwealth* v. *Giles*, 353 Mass. 1, 15 (1967) ("A conviction for perjury must be based upon proof beyond a reasonable doubt of the intentional falsity of an answer susceptible of a reasonably ascertainable meaning"); *Commonwealth* v. *Brady*, 5 Gray 78, 79 (1855) (witness's false swearing to fact, which he believes to be true to best of his knowledge, does not constitute perjury). We are hard pressed to say that a personal evaluation of bodily response to a particular intoxicating substance, like the one at issue here, can rise to the level of a knowingly false statement or an intentional omission of a material fact. This is only underscored where the over-all direct evidence of the defendant's impairment from either substance ingested was far from compelling, as discussed *infra*. Cf. *Commonwealth* v. *Giles*, 350 Mass. 102, 112 (1966), *S.C.*, 353 Mass. 1 (1967), overruled on other grounds by *Commonwealth* v. *McDuffee*, 379 Mass. 353 (1979) (in perjury context, knowledge of testimony's falsity "may be inferred by the trier of fact from circumstantial evidence, which reasonably tends to show that knowledge existed").

Even assuming, as the Commonwealth argues, that "what the trooper was getting at" would have been clear to a reasonable person, such that the defendant's statement indeed was knowingly false, there was insufficient evidence, taken in the light most favorable to the Commonwealth, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), that the defendant had the specific intent necessary to satisfy the impeding element of the offense, in order to prove a violation of § 13B.

In other cases brought under the "misleading" prong, such specific intent has been ascertained inferentially from a defendant's affirmative misrepresentations, plainly and demonstrably false, to law enforcement authorities. For example, in *Commonwealth* v. *Figueroa, supra* at 372-373,

> "[a] parole officer was investigating a possible violation of her directive that the defendant remain home after 6 P.M. on Halloween to avoid congregating with children who were out trick-or-treating . . . . On being asked why he left his home, the defendant told his parole officer that

> he had attended an [Alcoholics Anonymous] meeting in Framingham and that the [global positioning system (GPS)] information reflecting that he had been in an apartment complex must have arisen from a 'glitch' in the GPS system. He intentionally concealed his visit to [his girl friend's] apartment and his trick-or-treating activities with her children."

Similarly, in *Commonwealth* v. *Fortuna*, 80 Mass. App. Ct. 45, 47 (2011), the defendant told police that he had been shot from far away while walking home, "but that he did not know by whom or how." However, subsequent observation revealed black soot or gunshot residue around the defendant's wound and on his clothing, suggesting that the shooter was in very close proximity to the defendant and that the defendant's account of the shooting was false. *Id.* In affirming the defendant's conviction of misleading a police officer under § 13B, the Appeals Court concluded that, "[i]n light of the inconsistency between the defendant's account and expert testimony that he was shot at from a distance of no more than one and one-half feet away, the jury could have inferred that the defendant lied to the police and that he did so both intentionally and with the intent to mislead them." *Id.* at 51.

In those cases, the juries could have inferred from the defendants' affirmative falsehoods a specific intent to lead investigators astray, for the purposes of thereby impeding, obstructing, delaying, harming, punishing, or otherwise interfering with a criminal investigation or other aspects of the criminal process. See G. L. c. 268, § 13B (1). Here, however, there was no evidence of affirmative misdirection on the defendant's part. The defendant's statement, the simple word "no," was an exculpatory denial, not a content-laden fabrication designed to send police off course, thereby interfering with their investigation. After this negative response, police were in the same position they would have been in had the defendant instead remained silent.

Absent additional evidence of specific intent, such exculpatory denials, standing alone, rarely will permit a reasonable inference that a defendant possessed the specific intent necessary to establish

a violation of § 13B.[18] According to the principle of noscitur a
sociis, "a word gains meaning from others with which it is
associated." *Commonwealth* v. *Gallant*, 453 Mass. 535, 542
(2009), quoting H.J. Alperin & L.D. Shubow, Summary of Basic
Law § 19.10, at 846 (3d ed. 1996). The definitions of both
"intimidate" and "harass,"[19] which appear in a list in the statute
with "misleads," suggest malicious acts calculated to produce
certain effects on a third party, implying a similar meaning for
the word "misleads." See G. L. c. 268, § 13B (1) (*c*) ("Whoever,
directly or indirectly, willfully misleads, intimidates or harasses
another person . . ."). However, when an individual denies his
guilt, either falsely or truthfully, without otherwise making any
affirmative misrepresentations or attempting to shift the blame
onto a third party, it generally would be in aid of exculpating
himself from liability, rather than of inducing action by someone
else. As such, the relationship of that conduct to the fundamental
anti-witness-intimidation purpose of § 13B is at best attenuated.

In these circumstances, therefore, we conclude that, absent
other evidence of his intent to impede the investigation, the
defendant's denial did not provide a basis from which to infer
that he possessed the specific intent needed to establish a viola-
tion of § 13B. Because there was insufficient evidence to sustain
the defendant's conviction, it cannot stand.[20,21]

b. *Conviction of homicide by vessel.* Misdemeanor homicide
by vessel under G. L. c. 90B, § 8B (2), may be proved by one

---

[18]Any such additional evidence in this case undercuts, rather than cor-
roborates, the theory that the defendant possessed the requisite intent. When,
six days after their initial interview, police directly confronted the defendant
about his marijuana use on the day of the collision, after learning of it from
Brian Friguglietti, the defendant admitted to smoking marijuana that day, and
does not appear to have dissembled.

[19]See notes 13 and 14, *supra.*

[20]Because we conclude that there was insufficient evidence to support the
defendant's conviction under § 13B, we need not address his argument that
the conviction improperly rested on evidence of his unequivocal denial,
which, he contends, long has been held to be inadmissible under the com-
mon law of the Commonwealth. In any event, this argument is unavailing.
The common-law rule provides that "if a defendant is charged with a crime
and unequivocally denies it, that denial is not admissible in evidence." *Com-
monwealth* v. *Diaz*, 453 Mass. 266, 273 (2009), overruled on other grounds
by *Commonwealth* v. *Womack*, 457 Mass. 268 (2010). The rationale for the
rule is that "[e]xtrajudicial accusatory statements made in the presence of a

of three theories: a defendant operated a vessel with a blood alcohol level of 0.08 per cent; operated a vessel while under the influence of, inter alia, intoxicating liquor or marijuana; or operated a vessel recklessly or negligently so as to endanger the lives or safety of the public. In the absence of evidence supporting the first theory, that the defendant's blood alcohol level was at least 0.08 per cent, only the latter two theories were submitted to the jury.

Because the jury convicted the defendant of misdemeanor homicide by vessel on a general verdict slip, without specifying the theory of guilt, we must review the sufficiency of the evidence under both theories submitted to them to guard against the possibility of a nonunanimous verdict. See *Commonwealth* v. *Maynard*, 436 Mass. 558, 561 (2002), citing *Commonwealth* v. *Perry*, 432 Mass. 214, 221 (2000). The defendant concedes that evidence supporting a negligent-operation theory of guilt was sufficient to support his conviction, but argues that there was insufficient evidence at trial to prove beyond a reasonable doubt that the defendant operated the vessel while under the influence of intoxicating liquor or marijuana.[22]

defendant, which he has unequivocally denied, are [inadmissible] hearsay." *Commonwealth* v. *Womack*, *supra* at 272. See *Commonwealth* v. *Cruz*, 373 Mass. 676, 691 & n.12 (1977).

It is well established, however, that "operative words" bearing independent legal significance, such as those "used to effectuate the commission of a crime," are not hearsay. See *Commonwealth* v. *Purdy*, 459 Mass. 442, 452-453 (2011), and cases cited. The defendant's statement at issue, constituting the operative words of the charged § 13B violation, was a verbal act that did not fall within the ambit of the common-law rule, which remains unaltered by § 13B. That rule continues to bar the admission of unequivocal denials to establish either the truth of the accusation or consciousness of guilt. See *Commonwealth* v. *Diaz*, *supra* at 273-274. In prosecutions under § 13B, denial evidence is not used to show that a defendant in fact committed the act denied or that he was conscious of his guilt of that act. Rather, it is used to show that a defendant, by his dishonesty, committed a separate substantive offense. Cf. *Commonwealth* v. *Helfant*, 398 Mass. 214, 224 (1986) (evidence inadmissible for some purposes may be relevant and admissible for others).

[21]Because we determine that insufficient evidence supported the defendant's conviction under § 13B, we also do not reach his constitutional arguments. See *Commonwealth* v. *Vega*, 449 Mass. 227, 234 (2007) (court generally declines to address constitutional questions where there is readily available alternative ground that renders such decision unnecessary).

[22]The defendant moved for a required finding of not guilty based on insuf-

An individual may be found to have been "under the influence" when his consumption of intoxicating liquor, marijuana, narcotic drugs, depressants, or other stimulant substances "diminished [his] ability to operate a motor vehicle safely." See *Commonwealth* v. *Daniel*, 464 Mass. 746, 756 (2013), quoting *Commonwealth* v. *Connolly*, 394 Mass. 169, 173 (1985). "Although the Commonwealth 'need not prove that the defendant actually drove in an unsafe or erratic manner . . . it must prove a diminished capacity to operate safely.' "[23] *Commonwealth* v. *Daniel*, *supra*, quoting *Commonwealth* v. *Connolly*, *supra*. Such proof must comprise more than just the defendant's admission of guilt; the Commonwealth must adduce other evidence that corroborates the defendant's statements and establishes that "the crime was real and not imaginary." *Commonwealth* v. *Leonard*, 401 Mass. 470, 473 (1988), quoting *Commonwealth* v. *Forde*, 392 Mass. 453, 458 (1984).

Here, there was evidence at trial, in the form of the defendant's statements as well as the testimony of Friguglietti, that the defendant had consumed approximately four beers and had smoked one or two hits of marijuana on at least two separate occasions in the roughly four-hour period preceding the collision. The Commonwealth also called a drug recognition expert, who testified to the typical physical and cognitive consequences of ingesting marijuana and alcohol.

However, the expert did not testify to the manifestation of these symptoms in the defendant in particular. Cf. *Douillard* v. *LMR, Inc.*, 433 Mass. 162, 166-167 (2001) (in action against tavernkeeper for overserving alcoholic beverages, "[a]ssuming, without deciding, that the problem of individual variability in

---

ficient evidence of impairment by alcohol or marijuana at the close of the Commonwealth's case-in-chief and again at the close of all the evidence.

[23]This standard was set forth in the context of a prosecution for operating a motor vehicle while under the influence, pursuant to G. L. c. 90, § 24, rather than a prosecution for operating a vessel while under the influence, as is relevant here. See *Commonwealth* v. *Connolly*, 394 Mass. 169, 172-173 (1985). Courts in the Commonwealth have yet to interpret the statute concerning vessels, G. L. c. 90B, § 8B. However, because that statute uses the same language as does G. L. c. 90, § 24, in prohibiting the operation of vessels "while under the influence of intoxicating liquor, or of marihuana, narcotic drugs, depressants or stimulant substances, all as defined in [G. L. c. 94C], or the vapors of glue," we apply the same standard to both statutes.

response to alcohol prevents a plaintiff from relying exclusively on expert opinion to make out a case of apparent intoxication"). Indeed, the police officer who questioned the defendant on the lakeshore in the immediate aftermath of the accident observed that his eyes were not red or bloodshot, his speech was not slurred, there was no odor of alcohol, and he successfully completed field sobriety tests. By the same token, a breathalyzer test administered to the defendant three hours after the collision revealed a blood alcohol percentage of 0.00.

The question is a close one, but, construing the evidence in the light most favorable to the Commonwealth, we conclude that, quite apart from the expert's testimony, sufficient evidence supported the defendant's conviction. Although there was no direct evidence of the defendant's impairment, there was substantial direct evidence of his consumption of alcohol and marijuana. The jury could have inferred, based on other evidence admitted at trial, that such consumption had diminished his "judgment, alertness, and ability to respond promptly and effectively to unexpected emergencies." *Commonwealth* v. *Connolly*, *supra* at 173. In particular, there was evidence that the defendant drove his motorboat in a clockwise direction, which contravened the customary counterclockwise traffic pattern on the lake; that the boat "kept coming, kept going" after the collision and "continu[ed] on [its] route"; and that one witness perceived "a very distinct and clear smell of alcohol" upon loading the victim onto the boat. In addition to the fact of the collision, which "is corroborative of the other evidence of driving while intoxicated," *Commonwealth* v. *Marley*, 396 Mass. 433, 442 (1985), quoting *Commonwealth* v. *Funk*, 254 Pa. Super. 233, 238 (1978), this evidence tended to show that the defendant's earlier consumption of alcohol and marijuana diminished his capacity to operate the vessel safely. Thus, the defendant properly was convicted under G. L. c. 90B, § 8B (2), under either a negligent- or impaired-operation theory.

3. *Conclusion.* For the foregoing reasons, the defendant's conviction of misleading a police officer, G. L. c. 268, § 13B, is reversed, and the conviction of misdemeanor homicide by vessel, G. L. c. 90B, § 8B, is affirmed.

*So ordered.*