NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

13-P-1883                                    Appeals Court

COMMONWEALTH vs. KEITH R. RARICK.

No. 13-P-1883.

Berkshire.     January 29, 2015. - May 8, 2015.

Present:  Kafker, Grainger, & Agnes, JJ.

Motor Vehicle, Operating under the influence. Practice, Criminal, Required finding. Intoxication. Evidence, Intoxication.

Complaint received and sworn to in the Northern Berkshire Division of the District Court Department on January 4, 2013.

The case was tried before Rita S. Koenigs, J.

John O. Mitchell for the defendant.
Megan L. Rose, Assistant District Attorney, for the Commonwealth.

AGNES, J.  The defendant, Keith R. Rarick, was convicted of operating a motor vehicle while under the influence of intoxicating liquor, second or subsequent offense, in violation

of G. L. c. 90, § 24(1)(a)(1).[1]  On appeal, the defendant

contends that during the trial of the underlying offense, at the

close of the Commonwealth's case, his motion for a required

finding of not guilty should have been allowed because the

evidence that he was under the influence of alcohol was not

sufficient to warrant a finding by the jury that this element

had been proved beyond a reasonable doubt.  Because we conclude

that the evidence was sufficient both at the close of the

Commonwealth's case and at the close of the evidence, we affirm.

Background.  a.  The Commonwealth's case.  While on patrol

at approximately 3:04 A.M. in the early morning of January 1,

2013, special police Officer David Sherman of the Williamstown

police department was traveling northbound on Route 7 in a

marked cruiser when he passed the defendant's vehicle headed

southbound in the opposite direction.  Based on his mounted

directional radar system, which he had calibrated earlier that

day, Officer Sherman determined that the defendant's vehicle was

traveling fifty-eight miles per hour in a clearly marked forty-

---

[1] After the jury returned a verdict of guilty of the
underlying offense of operating a motor vehicle while under the
influence of intoxicating liquor, the defendant pleaded guilty
to the second offense portion of the complaint in accordance
with the procedure set forth in G. L. c. 278, § 11A.  The judge
sentenced the defendant to a two-year term of probation, with
conditions that included attendance at a fourteen-day,
residential alcohol treatment program, and fines and fees
totaling over $1,400.

five mile per hour speed zone.[2]  Officer Sherman activated his cruiser's blue lights and pulled the vehicle over without incident in front of the Waubeeka Golf Course.

When he approached the driver's window, Officer Sherman saw two people in the front seats of the vehicle:  the defendant, who was driving, and a woman in the passenger seat, who was identified as Diana Dawley, the defendant's girl friend. The officer's first observation was that he could "detect a strong odor of alcoholic beverage in the vehicle, . . . [and that] the defendant [had] glassy, bloodshot eyes."  Officer Sherman asked the defendant if he had been drinking anything.  Initially, the defendant told the officer that "he had a few," and a few minutes later the defendant stated that "he had had a six-pack with his last beer being at 1:00 A.M."

At this point, the officer asked the defendant to step out of the vehicle.  Dawley remained inside the vehicle.  The defendant is approximately six feet, three inches tall and weighed approximately 230 pounds.  Once the defendant was outside the vehicle, Officer Sherman "could definitely see that [the defendant's] eyes were glassy and bloodshot," and he observed that the defendant had a "moderate odor of alcoholic

---

[2] Route 7 is also known as Cold Spring Road and is a State highway in the town of Williamstown.  There are signs posting the speed limit at forty-five miles per hour, yield signs, and a warning light in the proximity of the location where Officer Sherman made this observation.

beverage coming from him." The defendant was chewing gum, which "seemed to mask some of the odor." The defendant remained outside the vehicle and under observation by Officer Sherman for approximately ten minutes, after which time the officer came to the conclusion that the defendant was intoxicated and placed him under arrest. There is no evidence that the defendant was asked to perform or performed field sobriety tests. The evidence indicates that when the officer approached the window of the defendant's vehicle, the defendant had his driver's license and vehicle registration ready. When asked to get out of the vehicle, the officer did not observe that the defendant had a problem doing so. The defendant was not swaying or staggering, and he did not have to lean against his vehicle for balance.

b. The defendant's case. The defendant called Diana Dawley, the passenger on the night in question, as his only witness. She testified that in keeping with his customary practice, the defendant got up very early in the morning of the day prior to the arrest. That evening, she and the defendant attended a cousin's New Year's Eve party in Vermont. The defendant brought a twelve-pack of light beer to the party. She testified that prior to driving to the party, they decided the defendant would stop drinking early in anticipation of driving home. They arrived at the party at about 7:30 P.M. They had a full dinner. She testified that during the evening she observed

the defendant drink some beer and some water.  Dawley testified that she observed that the defendant stopped drinking after the toast at midnight.  She also testified that she had six beers during the party.  They left the party at approximately 2:30 A.M.  Dawley further testified that she had no concerns about the defendant's ability to drive when they left the party.

Discussion.  a.  Standard of review.  "In evaluating the sufficiency of the Commonwealth's evidence, we consider the evidence introduced up to the time that the Commonwealth rested and the defense filed its first motion for a required finding of not guilty."  Cramer v. Commonwealth, 419 Mass. 106, 112 (1994).  Under the familiar Latimore standard, see Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979), when we review the evidence that was presented at trial to determine if it was sufficient, "we do not weigh the supporting evidence against conflicting evidence."  Commonwealth v. Merry, 453 Mass. 665, 660 (2009).  Our responsibility is to view the evidence in the light most favorable to the Commonwealth and to consider whether the evidence, including all reasonable and possible inferences, was sufficient to enable any rational trier of fact to "infer the existence of the essential elements of the crime charged."  Commonwealth v. Latimore, supra at 677, quoting from Commonwealth v. Sandler, 368 Mass. 729, 740 (1975).  "[T]he evidence of a defendant's guilt may be primarily or entirely

circumstantial." Commonwealth v. Lao, 443 Mass. 770, 779 (2005).

b. Sufficiency of the evidence of impairment. "[I]n a prosecution for operating a motor vehicle while under the influence of intoxicating liquor, the Commonwealth must prove beyond a reasonable doubt that the defendant's consumption of alcohol diminished the defendant's ability to operate a motor vehicle safely. The Commonwealth need not prove that the defendant actually drove in an unsafe or erratic manner, but it must prove a diminished capacity to operate safely." Commonwealth v. Connolly, 394 Mass. 169, 173 (1985). "Proof of drunkenness is not required." Commonwealth v. Sudderth, 37 Mass. App. Ct. 317, 321 (1994).[3] Further, factors other than alcohol may also contribute to the defendant's diminished capacity. "It is not necessary that alcohol be the sole or exclusive cause. It is enough if the defendant's capacity to operate a motor vehicle is diminished because of alcohol, even though other, concurrent causes contribute to that diminished capacity." Commonwealth v. Stathopoulos, 401 Mass. 453, 457

---

[3] In Commonwealth v. Lyseth, 250 Mass. 555, 558 (1925), quoting from Cutter v. Cooper, 234 Mass. 307, 317-318 (1920), the court observed that "[w]hatever difficulties there may be in framing with precision a definition of the extent of inebriety which falls short of and which constitutes drunkenness, there is a distinction between that crime on the one hand and merely being under the influence of liquor on the other hand, which is recognized in common speech, in ordinary experience, and in judicial decisions."

(1988). See <u>Commonwealth</u> v. <u>Bishop</u>, 78 Mass. App. Ct. 70, 74-75 (2010) (impairment due to consumption of alcohol and prescription medication).[4]

Although in the present case there was no evidence of erratic operation or a collision, and Officer Sherman did not direct the defendant to perform any of the customary field sobriety tests,[5] the evidence that the defendant had consumed six

---

[4] In <u>Commonwealth</u> v. <u>Morse</u>, 468 Mass. 360, 378 (2014), the defendant challenged the sufficiency of evidence to convict him of misdemeanor homicide while operating a vessel under the influence of alcohol or drugs. The defendant operated a motorboat on a lake and struck a kayak containing a father and son, killing the child and seriously injuring the father. The evidence included statements by the defendant and another that the defendant had consumed approximately four beers and had smoked "one or two hits" of marijuana on at least two separate occasions in the roughly four-hour period preceding the collision. There was evidence that immediately after the accident the defendant's eyes were not red or bloodshot, his speech was not slurred, and there was no odor of alcohol coming from him. <u>Id</u>. at 363. In addition, the defendant successfully completed field sobriety tests. A breathalyzer test administered to the defendant three hours after the collision revealed a blood alcohol percentage of 0.00. <u>Id</u>. at 363, 378. In rejecting the argument that the evidence of impairment due to alcohol was insufficient, the Supreme Judicial Court explained that the absence of any direct evidence of the defendant's impairment did not diminish the significance of the evidence that the defendant had consumed alcohol and marijuana. <u>Id</u>. at 378. Furthermore, the court added that based on the manner in which the defendant operated his boat, including the collision, "[t]he jury could have inferred . . . that such consumption had diminished his 'judgment, alertness, and ability to respond promptly and effectively to unexpected emergencies.'" <u>Id</u>. at 378, quoting from <u>Commonwealth</u> v. <u>Connolly</u>, 394 Mass. at 173.

[5] Field sobriety tests are useful in these cases because "[a] lay juror understands that intoxication leads to diminished balance, coordination, and mental acuity from common experience

beers in the hours before he was stopped and the officer's lay witness opinion testimony that the defendant was intoxicated,[6] along with the evidence that he was speeding in an area where the speed limit was clearly marked, were sufficient to warrant a finding by the jury that the defendant's consumption of alcohol diminished his ability to operate his vehicle safely.  See Commonwealth v. Cowels, 425 Mass. 279, 286 (1997); Commonwealth v. Moquette, 439 Mass. 697, 702 (2003).  See also Commonwealth v. Atencio, 12 Mass. App. Ct. 747, 750-751 (1981); Commonwealth v. Sudderth, 37 Mass. App. Ct. at 321.  Contrast Commonwealth v. Daniel, 464 Mass. 746, 756-757 (2013) (although officer smelled odor of burnt marijuana and recovered two small bags of marijuana, "the Commonwealth elicited no testimony that [the driver] showed any signs of impairment during their encounter").

---

and knowledge."  Commonwealth v. Sands, 424 Mass. 184, 188 (1997). However, typical field sobriety tests do not supply the basis for a scientific opinion about whether a person is under the influence of alcohol or the level of intoxication but, instead, supply the basis for a lay witness opinion like the opinion expressed by Officer Sherman in this case.  See Commonwealth v. Brown, 83 Mass. App. Ct. 772, 774 n.1 (2013).

[6] The Supreme Judicial Court has defined the boundary between permissible lay witness opinion testimony that a person is intoxicated (or words to that effect), whether the witness is a police officer or a civilian, see Mass. G. Evid. § 704 (2015), and testimony that impermissibly expresses an opinion that the defendant's capacity to operate a motor vehicle safely was diminished by the consumption of alcohol, a question reserved exclusively for the fact finder.  See Commonwealth v. Canty, 466 Mass. 535, 544 (2013).  That boundary was not violated in this case.

The defendant's contention reduces to a claim about the weight of the evidence. However, the weight of the evidence is not the yardstick we use to test whether the evidence satisfies the requirement of proof beyond a reasonable doubt.  See Commonwealth v. Cullen, 395 Mass. 225, 231 n.4 (1985); Commonwealth v. Orben, 53 Mass. App. Ct. 700, 704 (2002).  The question we ask is not whether a reasonable person would conclude that the Commonwealth's proof was sufficient, but instead whether "any rational trier of fact" would reach that conclusion.  Latimore, 378 Mass. at 677, quoting from Jackson v. Virginia, 443 U.S. 307, 318-319 (1979).  "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  Jackson v. Virginia, supra at 319.

Conclusion.  The essential teaching of Commonwealth v. Connolly, 394 Mass. at 172, that governs our assessment of the evidence in this case is that the offense of operating a motor vehicle on a public way while under the influence of intoxicating liquor requires the Commonwealth to prove both that the defendant consumed alcohol and that his capacity to drive safely was impaired, but it does not require the Commonwealth to "prove the defendant actually drove unskillfully or carelessly."  Here, the evidence that the defendant had consumed at least six

beers in the hours before he was stopped, that a moderate odor of an alcoholic beverage was coming from his person, that his eyes were red and glassy, and that he was speeding while driving on a road where the posted speed limit was clearly marked was sufficient to permit a rational fact finder to infer that he was operating while under the influence of intoxicating liquor.  It is not our function to weigh the evidence or to opine whether we would have reached the same result as the jury.[7]

Judgment affirmed.

---

[7] During the defendant's case, his girl friend testified that the defendant got up for work on the day in question at 4:00 A.M., that the alcoholic beverage they brought to the party was a twelve-pack of an "ultra-light" beer, that the defendant consumed a large amount of food during the evening, that she "had a good buzz" when they left the party, and that she had no concern about the defendant's ability to drive safely.  However, she also testified on cross-examination that when they were stopped she told the officer, "I'm worse than he is."  To the extent that some of her testimony may be regarded as exculpatory, it does not mean that the Commonwealth's case deteriorated for purposes of the defendant's motion for a required finding made at the close of the evidence.  See Commonwealth v. Basch, 386 Mass. 620, 622 n.2 (1982).  The jury were entitled to disregard the girl friend's exculpatory testimony, or assign only little weight to it.