NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

19-P-602                                            Appeals Court

COMMONWEALTH  vs.  STEVEN K. PROIA.

No. 19-P-602.

Norfolk.     April 15, 2020. - July 27, 2020.

Present:  Rubin, Blake, & Wendlandt, JJ.

Motor Vehicle, Operating under the influence, License to
     operate.  Alcoholic Liquors, Motor vehicle.  Evidence,
     Intoxication, Best and secondary.  Practice, Criminal,
     Instructions to jury, Required finding, Mistrial.

Complaint received and sworn to in the Wrentham Division of
the District Court Department on January 12, 2015.

     The case was tried before Thomas L. Finigan, J., and
postconviction motions were heard by him.

     The case was submitted on briefs.
     Richard J. Dyer for the defendant.
     Laura A. McLaughlin, Assistant District Attorney, for the
Commonwealth.

     RUBIN, J.  The defendant was convicted after a jury trial

of operating under the influence of alcohol, third offense,

G. L. c. 90, § 24 (1) (a) (1); leaving the scene after causing

property damage, G. L. c. 90, § 24 (2) (a); and negligent

operation of a motor vehicle, G. L. c. 90, § 24 (2) (a).
Viewing the evidence in the light most favorable to the
Commonwealth, the jury could have found the following facts:
On January 11, 2015, at about 7:30 P.M., State Trooper
Christopher Booth, responding to an accident on Route 495 south
in Franklin, observed a sport utility vehicle (SUV) with
extensive damage, and a family of six standing on the side of
the highway.  The driver of the SUV, his fiancée, and four
children had been driving home to Connecticut after a day of
skiing in New Hampshire.  The driver of the SUV testified that
while driving southbound on Route 495, he observed a black sedan
approach his SUV from behind at a high rate of speed, which he
estimated to be in excess of one hundred miles per hour.  The
black sedan struck the rear of the SUV and the two vehicles
became attached, as the passenger's side fender of the black
sedan went underneath the driver's side wheel well of the SUV.
After four to five seconds, the vehicles separated.  The black
sedan veered into the center median of Route 495.  The driver of
the SUV regained control and pulled off the road.  The black
sedan drove across the center median, across the travel lanes of
Route 495 north, and onto the ramp for exit sixteen.  There was
a loud screeching sound and sparks radiating from the black
sedan as it left the highway.

About one-half mile from exit sixteen, Franklin police officers located a black Mercedes sedan parked on the side of a local road, in a snowbank, partially blocking the travel lane, with extensive damage to the front end, passenger side, and windshield.  There was no operator, nor anyone else, present at the scene.  The front airbags had deployed and there were "red brown stains" on the driver's side airbag, consistent with blood.  After arriving at the scene, Trooper Booth determined that the black Mercedes was registered to the defendant.  Trooper Booth found the defendant's driver's license on the floor of the Mercedes.

Franklin police officers located the defendant about one-half mile from the abandoned Mercedes, in the parking lot outside Cole's Tavern (tavern) in Franklin.  Trooper Booth met them there.  The defendant had a bleeding laceration on his head, lacerations to his hands, "red brown stains" on his hands and pants, and soaking wet pants and shoes, consistent with having walked through snow.  The officers detected a strong odor of alcohol on the defendant's breath, and noticed his eyes were bloodshot and his speech slurred.  The defendant identified himself, but had no identification on him.  He was disoriented as to his location.  Trooper Booth also testified that he observed the defendant to be "unbalanced" and "swaying side to side."  The defendant told Trooper Booth in response to

questions that a friend had dropped him off at the tavern. He denied driving.

Discussion. On appeal, the defendant argues first that motions for a required judgment of not guilty should have been allowed. The defendant moved timely for required findings of not guilty on all charges at the end of the Commonwealth's case, when he rested, and upon filing a postdischarge motion for a required finding of not guilty. We review for sufficiency of the evidence under the well-known standard of Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), asking whether, after viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

The defendant argues that there was insufficient evidence to support a finding of guilty beyond a reasonable doubt both of operation of the Mercedes and of the defendant's impairment.

As to operation, the evidence was sufficient. The jury could clearly have found that the Mercedes, registered to the defendant, was operated on the night in question. They could have found that it was involved in an extremely serious accident and was found in a snowbank, severely damaged, with the defendant's driver's license on its floor, the airbags deployed, and blood stains on the driver's side airbag. The jury could

have found the defendant was located outside a nearby tavern a mere thirty minutes after the call first came in to the police about the accident. His pants and shoes were wet as though he had been walking through snow, and he had lacerations on his hands and head consistent with having been in an accident and that might have left bloodstains on the driver's side airbag that deployed in a car that he was driving, as were found in the Mercedes. He had no identification on him. Although circumstantial, this evidence suffices to support the jury's finding on operation. It is far more evidence of operation than what was found insufficient in Commonwealth v. Shea, 324 Mass. 710 (1949), upon which the defendant relies.[1]

---

[1] In Shea, 324 Mass. at 712, the defendant's wife's car was found abandoned in Ayer one and three-quarter miles from the location at which it had been involved in an accident. As in this case, no percipient witness could identify who was operating the vehicle at the time of the accident, but there was testimony that a Westford police officer saw someone else driving the vehicle two hours and forty-five minutes before the accident. Id. About fifteen minutes after the accident, from a house 300 feet away from the abandoned vehicle and located on a chicken farm, the defendant called the owner of a garage and asked him to tow the vehicle, which the defendant described as having "konked out." Id. An hour after that, the defendant went to the house of a taxi driver and asked for a ride home. Id. When the taxi with the defendant inside was stopped by the police, "the defendant was very wet and he had chicken feathers on his trousers." Id.

The Supreme Judicial Court concluded that "the evidence . . . 'tends equally to sustain either of two inconsistent propositions [the guilt or innocence of the defendant] . . . .'" Shea, 324 Mass. at 713, quoting Smith v. First Nat'l Bank, 99

As to impairment, "the Commonwealth must prove beyond a reasonable doubt that the defendant's consumption of alcohol diminished the defendant's ability to operate a motor vehicle safely."  Commonwealth v. Rarick, 87 Mass. App. Ct. 349, 352 (2015), quoting Commonwealth v. Connolly, 394 Mass. 169, 173 (1985).  Here, there was testimony from which the jurors could have inferred that the defendant was intoxicated when found outside the tavern shortly after the accident.  The way in which the Mercedes was left, halfway in a snowbank and sticking out into the travel lane of a road, indeed the way it was operated

---

Mass. 605, 612 (1868).  As the Supreme Judicial Court subsequently explained,

> "Our holding in the Shea case . . . was based on the fact that the Commonwealth failed to introduce any evidence placing the defendant in the hit-and-run vehicle on the date of the offence either before or after the accident.  Moreover, there was evidence in that case that another unknown person had been seen operating the vehicle less than three hours before the accident.  This court concluded that '". . . [a] careful examination of the record discloses nothing more than speculation, conjecture or surmise upon which such a [guilty] finding could be based.  This is insufficient to sustain the burden resting upon the Commonwealth." Commonwealth v. Albert, 310 Mass. 811, 816-817 [1942].' [Shea, supra at 714]."

Commonwealth v. Rand, 363 Mass. 554, 561 (1973).  Here, by contrast, there is circumstantial evidence beyond what was present in Shea supporting an inference that the defendant was in the driver's seat operating the vehicle, including that it was the defendant's own car, the defendant's driver's license was found in the car, there were lacerations on the defendant, and there were "red brown stains" on the driver's side airbag.

on Route 495, when combined with the evidence of intoxication further supports an inference that might reasonably have been drawn by the jurors, that the defendant was impaired by reason of his consumption of alcohol in his ability to operate the Mercedes at the time he drove it. The evidence on that element thus suffices as well.

The defendant next argues that he is entitled to a new trial because, when describing at trial his interaction with the defendant in the tavern's parking lot, Trooper Booth testified that "I asked him if he -- he wanted to do field sobriety testing based on my observations. He stated no --."

There was an objection, which was sustained. This testimony was, of course error, see Commonwealth v. McGrail, 419 Mass. 774, 779-780 (1995), and indeed, the judge had allowed the defendant's motion in limine to exclude any evidence of refusal to take field sobriety tests. The prosecutor represented to the judge that he had specifically instructed the witness not to mention field sobriety tests, and it is a fair (although not proven) inference therefore that this was a deliberate violation by the witness of the judge's order.

The defendant moved for a mistrial. This motion was denied by the judge, who instead provided a curative instruction. On appeal, the defendant renews his argument that this testimony required a mistrial.

The decision whether to allow a motion for mistrial rests in the sound discretion of the trial judge.  See <u>Commonwealth</u> v. <u>Amran</u>, 471 Mass. 354, 359 (2015).  Although the testimony was clearly in error, and may even have amounted to deliberate misconduct -- something we need not decide -- we think that, in light of the curative instruction given by the judge, he was within his discretion to deny the defendant's motion.  The curative instruction was strong.  It included the following language:  "So you must act as if you -- I instruct you that you cannot give that any consideration whatsoever when you deliberate, and you must act as if you never heard that testimony. . . .  It would be unfair to the defendant for you to consider it or to allow it to affect your deliberations.  You should disregard it in its entirety."

In addition to then listing many reasons why someone might refuse to submit to a field sobriety test, by agreement of the parties he added, "But in this particular case, the parties stipulate that -- that the defendant, when asked by Trooper Booth to perform field sobriety tests, he refused because he maintained he was not driving the vehicle, which of course makes sense for the -- when you think about it in those terms."

The defendant's agreement to the curative instruction, after his mistrial motion was denied, of course does not waive his right to appeal from the judge's determination to deny the

motion for a mistrial and instead give this curative instruction. But we think that, given the strength of the curative instruction, the risk of prejudice from the error was sufficiently addressed that a mistrial was not required as a matter of law.

Finally, the defendant argues that the admission of the trooper's testimony that the driver's license found in the Mercedes had the defendant's name on it was not admissible.

The defendant argues first, as he did when he objected to the admission of this testimony at trial, that the name on the license was inadmissible hearsay. The license however was not admitted for the truth of anything it said. Rather, the trooper was testifying to the fact that he observed a driver's license with the defendant's name on it. Even assuming that a name on a driver's license amounts to a statement by the registry of motor vehicles that that person is licensed to drive, the evidence of what the license said in this case was not admitted for the truth of that matter, but to show that a driver's license that said the defendant's name, and thus might have been expected to be in his possession, had been found at the time in question on the floor of the Mercedes.

Before us the defendant also argues that the admission of this testimony violated the best evidence rule. At trial, defense counsel did object that the license itself was not

introduced as evidence, but he never mentioned the best evidence rule, which "deprived the Commonwealth of the opportunity to produce the original writing, or show a sufficient excuse for its nonproduction" (citation and quotation omitted). Commonwealth v. Alvarez, 480 Mass. 1017, 1019 n.4 (2018). Accord Bendelow v. United States, 418 F.2d 42, 47 (5th Cir. 1969), cert. denied, 400 U.S. 967 (1970) ("pursuit of the matter by voir dire for the purpose of objection would doubtless have disclosed whether the [t]rooper had retained the [driver's license] and could produce it, whether representatives of the prosecution had custody of it, or whether it was returned to the defendant and was thus protected from coerced production by him under the Fifth Amendment [to the United States Constitution]. We are left to speculation as to the result of such an evidentiary excursion").

Even had the objection been preserved properly, whether the best evidence rule applies to a driver's license in circumstances like this appears to be an open question, although the name on the license would seem to fall within the definition of the contents of a writing. There are some nineteenth-century cases which, if still binding, might have bearing on the question. Thus, in Commonwealth v. Blood, 11 Gray 74, 77 (1858), the Supreme Judicial Court concluded that testimony by a witness that he had been in the defendant's house and had seen

jugs with labels on them that said "rye whiskey," did not violate the best evidence rule.  The court said, "The labels on the jugs do not come within any class of written instruments, the contents of which cannot be proved without producing the original paper or document, or accounting for its loss or unavoidable absence."  Id.  Likewise, in Commonwealth v. Brown, 124 Mass. 318, 319 (1878), the Supreme Judicial Court held that the writing observed by the witness on a license hanging on the wall of a liquor dealer's shop might be testified to orally.

In any event, we need not and do not reach the question.  Even assuming what we do not decide, that the best evidence rule applies and was violated, because the claim of error was not adequately preserved we would reverse only if the defendant has shown a substantial risk of a miscarriage of justice.  The purpose of the best evidence rule is "'to assure the trier of the fact of having the most direct and reliable evidence possible of the contents of a writing . . . .'  Maguire, Evidence:  Common Sense and Common Law, pages 229-230."  Fauci v. Mulready, 337 Mass. 532, 541 (1958).  But on all the facts and circumstances of this case, the risk of erroneous recollection is very low.  Contemporaneous with finding the license, Trooper Booth discovered that the defendant, Steven Proia, was the registered owner of the Mercedes.  Indeed, he testified that when he entered the Mercedes he found the license

of "the registered owner, Mr. Proia," and that the name on the license read "Steven Proia."  Within minutes he was called to the tavern, where local police had found someone matching the description on the license, and where he met the defendant.  The likelihood is low in these circumstances that his recollection of the name on the license is unreliable.  Thus, "[e]ven if the best evidence rule applied here, we cannot say that any potential violation created a substantial risk of a miscarriage of justice."  Alvarez, 480 Mass. at 1019 n.4.

Judgments affirmed.